CULPEPPER, Judge.
This is a personal injury case. Plaintiff’s minor daughter, Lisa Ann Davis, was injured while a guest passenger in an automobile driven by Sam D. James, which struck the rear of a pickup truck driven by Gregory A. Cochran. The defendant, Southern Farm Bureau Casualty Insurance Company, carried liability insurance on the James vehicle with a limit of $10,000 per person and in addition carried uninsured motorist coverage on a vehicle owned by Lisa’s father, with a limit of $100,000 per person. The defendant, State Farm Mutual Automobile Insurance Company, carried liability insurance on the Cochran vehicle with a limit of $10,000 per person. The district judge found the accident was caused solely by the negligence of James. Judgment was rendered in favor of plaintiff against Southern Farm for the limit of $10,000 under its policy issued to Sam D. James and in addition for the sum of $40,000, plus medical expenses under the uninsured motorist provisions of the policy issued by Southern Farm to Lisa’s father, Charles H. Davis. The total award for general damages was $50,000. Southern Farm appealed. Plaintiff answered the appeal, asking an increase in the quantum to $100,000.
The issues are: (1) Was Sam D. James negligent? (2) Was Gregory Cochran negligent? (3) Is the award of $50,000 excessive or inadequate? (4) Should Southern Farm be given an offset in the sum of $800.32 for medical expenses paid by it to Charles H. Davis under the uninsured motorist provisions of the policy issued to Davis?
The facts are that on February 2, 1979, at about 11:00 P.M., Lisa Ann Davis, then 15 years of age, was riding as a guest passenger on the front seat of a 1955 Chevrolet sedan owned and driven by Sam D. James, then 21 years of age. They were proceeding in a southerly direction on State Highway No. 487, a two-lane blacktop highway leading from Ajax to Marthaville. A misty rain was falling.
James testified that as he drove over the top of a hill he saw for the first time the Cochran vehicle in front of him in the south bound lane. James says he applied his brakes, but was unable to stop. He struck the Cochran pickup truck in the rear. Lisa was thrown forward and received facial injuries. James testified he does not know how fast he was going. He admitted he did not see any vehicles approaching from the south to prevent him from going around Cochran.
Cochran testified that he was driving in a southerly direction at a speed of about 55 miles per hour when he passed his “buddy”, Joey Masterson, traveling in the opposite direction. He signaled to Masterson to stop by patting his brake lights. Cochran testified he had slowed to 20 or 30 miles per hour and had traveled a distance of about 100 feet from the time he began slowing down, when he was suddenly struck from the rear by the James vehicle. It was a severe impact. Cochran’s pickup traveled approximately 300 feet after impact and was a total loss.
Joey Masterson testified that after he saw Cochran slowing down, he turned to the right into a cross-road and stopped, expecting Cochran to go on down the highway and turn around and come back. Mas-terson testified he heard the James car coming over the hill after he turned into the cross-road, and that then he heard the crash.
The state trooper who investigated the accident testified Cochran told him at the scene he was slowing down so he could turn around and go back and talk to Masterson, and the James vehicle came over the hill and hit him. The trooper found no evi *289 dence of skidmarks left by the James automobile. The impact was in the south bound lane. The trooper estimated the Cochran pickup truck traveled approximately 300 feet and the James vehicle approximately 270 feet after impact. Also, the trooper testified the accident occurred about 200 feet south of the crest of the hill.
Certainly, the trial judge is not clearly wrong in concluding from the above evidence that Sam James was negligent in traveling at an excessive speed during a rainy night on a wet, slippery highway, and in failing to keep a proper lookout and to maintain control over his vehicle.
The principal issue is whether Cochran was also negligent. Southern Farm argues that it was only 125 to 165 feet from the crest of the hill to the point of impact, and that in view of this short distance and the failure of James to see Cochran sooner, the only logical explanation for the accident is that Cochran had actually stopped on the highway and was waiting for Masterson to come back to him, or that Cochran had stopped and was backing up to come back to Masterson. The evidence does not support such a theory. Cochran testified that at the time of impact he had slowed from about 55 miles per hour to 20 or 30 miles per hour and was planning to turn around at a driveway farther to the south. There is no evidence to the contrary. The trial judge was not clearly wrong in finding Cochran free of negligence.
The next issue is whether the award was excessive or inadequate. Immediately after the accident, Lisa was taken to a hospital in Natchitoches, where she was seen by Dr. David Lee, a specialist in ear, nose and throat, including facial and reconstructive plastic surgery. In the hospital record of his initial surgical procedures, Dr. Lee described the facial injuries as follows:
“DIAGNOSIS: Blunt and sharp trauma to face. Severe facial lacerations.
“OPERATION PERFORMED: Plastic closure of facial lacerations: 1. Flap defect right superior orbital area, 2. through and through laceration upper lip, 3. multiple nasal and facial lacerations.
“This is a 15 year old female admitted by way of the emergency room and operating room for closure of severe facial lacerations secondary to auto accident. The patient’s physical exam was grossly negative except for the face with severe lacerations of the right brow region with a flap defect as described on the operative report. She had a through and through laceration of the mid upper lip as well as multiple abrasions and lacerations of the nose and face. These were meticulously cleaned and closed with plastic technique in the OR. Her post-op course has been benign, with topical treatment being applied. One half of the sutures were removed from her face on the 3rd post-op day, with the rest of the sutures planned to be removed in the office in the a. m. The face is clean and healing well with no evidence of infection. She is discharged to out-patient care and has been instructed on proper care. She will revisit my office again as instructed.”
In his deposition taken in March of 1980, Dr. Lee testified there was a disfiguring residual scar of the right eyebrow where tissue is missing and the nerve is dead. This will require future plastic surgery. She also still had a notable raise of the area of the laceration in the lower part of the lip, which was still tender. On the right forehead, just above the brow region, she had a hytertrophic scar, which also would require future plastic surgery.
For the dental injury, Lisa saw Dr. Jerry Ferguson. The upper right central incisor was broken off and required a crown. The upper right lateral incisor was loose, but it had stabalized and caused no trouble as of the time of Dr. Ferguson’s April, 1980 deposition. However, Dr. Ferguson testified that the blow to that tooth could cause it to later die and require root canal therapy.
Lisa also suffered an injury to her right eye, for which she was seen by Dr. Donald E. Texada, a specialist in opthalmology. He found she had some blood inside the eye, causing her to see “floaters.” He found no retinal tear, but stated that it is possible *290 one could have occurred as a source of the bleeding. His prognosis was that the blood would settle to the bottom of the eye and not cause too much trouble, but this prognosis was guarded. He stated it was possible that she could have future complications such as additional bleeding, cataracts, etc. His recommendation was that her condition be followed, especially because you always worry that there was a retinal tear.
During the trial the judge personally examined Lisa’s facial injuries, particularly the scarring. Based on his personal examination of the facial scarring, the testimony of Lisa as to her injuries and the depositions of the physicians, the district judge made an award of $50,000 for general damages. Certainly, this was not an abuse of the much discretion of the trial judge as to the quantum of awards in personal injury cases.
The final issue is whether Southern Farm is entitled to an offset for the sum of $800.32 in medical expenses paid under the uninsured motorist coverage of its policy issued to Charles H. Davis. The judgment appealed awards $50,000 in general damages for pain, suffering and disability, and then in addition awards total special damages of $3,851.22 for past and future medical expenses. Southern Farm cites Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir. 1979) as authority for allowing the credit of $800.32 for medical expenses paid before trial. Under the Launey case, we agree Southern Farm is entitled to this credit.
For the reasons assigned, the judgment appealed is amended so as to give Southern Farm Bureau Casualty Insurance Company a credit of $800.32 for medical expenses previously paid under the uninsured motorist coverage of its policy issued to Charles H. Davis. Otherwise, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED, AS AMENDED.