Patricia L. and Raymond C. TUENGE, wife and husband, Appellants,

v.

Michael James KONETSKI, Respondent.

No. 81–812.

Supreme Court of Minnesota.

June 11, 1982.

1. *See* comments to section 3.01 and *State v.* Schallock, 281 N.W.2d 186, 188 (Minn.1979).

Gislason & Martin and Robert W. Gislason, Edina, for appellants.

Rothstein, Wolf, Kaplan & Goff and Howard L. Kaplan, St. Paul, for respondent.

OTIS, Justice.

This is a tort action to recover damages for personal injury arising out of an automobile accident. Plaintiffs appeal from an order of the district court denying their motion for amended findings of fact and conclusions of law. At issue is the construction of the offset provision of the Minnesota No-Fault Automobile Insurance Act (the Act), Minn.Stat. § 65B.51, subd. 1 (1980), which provides that any tort recovery arising out of an automobile accident be reduced by the amount of basic or optional economic loss benefits paid or payable.

Plaintiff Patricia Tuenge was injured in an automobile accident on July 10, 1978. She was a properly insured motorist and

pursuant to Minn.Stat. § 65B.44, subd. 3 (1980), she received from her reparation obligor (insurer) $11,115.79 of basic economic loss benefits for wage loss up to the time of trial. At trial liability was admitted by defendant and only the issue of damages was litigated. The jury returned the following special verdict:

What sum of money will fairly and adequately compensate Patricia L. Tuenge for the following elements of damage:

a) Loss of wages from July 10, 1978, up to the time of trial: $3,063.60.

b) Pain and suffering from July 10, 1978, up to the time of trial: $4,600.00.

c) Future loss of earning capacity: $11,036.92.

d) Future pain and suffering: $21,000.00.

Total amount: $39,700.52.

The jury's special verdict raised an interesting problem for the trial court in applying the offset of section 65B.51, subdivision 1. Because Patricia Tuenge had received $11,115.79 from her insurer for past wage loss while the jury awarded only $3,063.60 for the same item of damage, the trial court was required to determine whether the offset should operate against the total verdict of $39,700.52 thus resulting in a deduction of $11,115.79, or whether the offset should operate only against that portion of the verdict representing the same item of damage, $3,063.60. The trial court ordered a deduction of $11,115.79 and entered judgment accordingly. We disagree with that determination and remand for entry of judgment in accordance with this opinion.

In construing the offset provision of section 65B.51, subdivision 1, we must consider two of the major purposes of the Act, "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state" and "to provide offsets to avoid duplicate recovery." Minn. Stat. § 65B.42(1) and (5) (1980). In light of these two purposes we recently stated in *Pfeffer v. State Automobile and Casualty*

*Underwriters Insurance Co.*, 292 N.W.2d 743 (Minn.1980), "the major thrust of the Act would appear to be to promote *full*, but not *over*-compensation for all motor vehicle related injuries." *Id.* at 747–48 (emphasis added). In *Pfeffer* we were called upon to determine the extent of an insurer's right to subrogation against its insured where the insured had not been fully compensated for his injury. We concluded:

> We therefore hold that a no-fault insurer is not entitled to subrogation under Minn. Stat. § 65B.53, subd. 2 (1974) (amended 1976) to the proceeds in a settlement, made by its insured with a third party tortfeasor, where the insured has not been fully compensated for his injury.

*Id.* at 749. *See also State Farm Insurance Cos. v. Galajda*, 316 N.W.2d. 564 (Minn. 1982); *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974).

■ The reasoning of *Pfeffer* is particularly applicable to the offset provision of section 65B.51, subdivision 1. That provision states:

> *Deduction of basic economic loss benefits.* With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable or which will be payable in the future, or which would be payable but for any applicable deductible.[1]

While this provision is not stated in terms of subrogation, we think it should be treated like a subrogation claim. *See* Steenson,

*A Primer on Minnesota No-Fault Automobile Insurance,* 7 Wm. Mitchell L.Rev. 313, 393 (1981). At first glance the offset somewhat anomalously appears to provide a deduction for defendant's insurer when it is plaintiff's insurer that has an interest in subrogation because of its previous payment of basic economic loss benefits. Over the course of time, however, this offset will operate as subrogation because plaintiff's insurer in one case will be defendant's insurer in another case and all insurers will eventually benefit somewhat equally. In addition, like subrogation, the offset operates to preclude duplicate recovery or "over-compensation." *Pfeffer v. State Automobile and Casualty Underwriters Insurance Co.*, 292 N.W.2d 743, 747–48 (Minn. 1980).

■ Seen in this light, the offset provision, like subrogation, should not operate until plaintiff has been fully compensated. In this case, however, the trial court applied the offset provision so as to invade items of damage for which plaintiff has not yet been compensated. This occurred because the jury award for loss of wages up to the time of trial was only $3,063.60, while plaintiff's insurer had previously paid her $11,115.79 for the same item of damage.[2] As a result, when the trial court deducted the full $11,-115.79 it effectively invaded plaintiff's recovery for uncompensated items of damage such as future wage loss and non-economic detriment. This result not only undermines the major thrust of the Act to promote full and not over-compensation, but also undermines a general state policy interest in seeing that tort victims are fully compensated. *See, e.g., Hague v. Allstate Insurance Co.*, 289 N.W.2d 43 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

1. In *Haugen v. Town of Waltham*, 292 N.W.2d 737 (Minn.1980) we held that portion of the offset provision requiring the deduction of benefits payable in the future to be unenforceable pending further legislative enactments relating to the subject matter.

2. This situation is not unique nor does it necessarily result from the fact that plaintiff's insurer overpaid her with respect to loss of wages. Rather, it can be expected that this disparity between wage loss benefits paid by an insurer and wage loss damages awarded by a jury may frequently arise. At trial, wage loss must be proved in an adversarial setting by a preponderance of the evidence. There is no such standard for the collection of basic economic loss benefits. At any rate, even if plaintiff's insurer did overcompensate her, this is a matter between plaintiff and her insurer and does not influence our construction of the Act.

We do not think the offset provision should operate as a penalty, but rather should operate only to the extent necessary to preclude duplicate recovery.[3]

On remand, only that portion of the jury's special verdict allowing plaintiff a duplicate recovery for past wage loss shall be subject to offset under section 65B.51, subdivision 1. Put another way, the allowable offset in this case is $3,063.60.

Remanded.

---

**3.** If the offset provision were applied against the entire verdict thus invading uncompensated items of damage we would effectively nullify the special verdict process. Indeed, one of the salient benefits of a special verdict in this kind of case is to itemize damages so as to facilitate application of the offset only against those items of damage representing duplicate recovery.