Michael **GANLEY**, Plaintiff–Appellee,

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

No. 88–3719
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1989.

Walter J. Postula, Asst. U.S. Atty., Orlando, Fla., for defendant-appellant.

Before FAY, ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The issue in this appeal involves the operation of Florida's motor vehicle collateral source rule. The district court held that the rule operates to reduce only that portion of a damage award that was intended to be compensated by the collateral benefits. We agree and affirm.

## I. Background

On October 9, 1984, Michael Ganley (Ganley) filed an action under the Federal Tort Claims Act for injuries sustained in an accident with a postal employee who was operating a personally-owned automobile.[1] Following a bench trial, the district court determined that both Ganley and the postal employee were fifty percent responsible for Ganley's injuries.[2]

The district court found that Ganley had suffered injury in the following amounts:

| | |
|---|---|
| Past Medical Expenses | $124,265.43 |
| Lost Wages | 25,000.00 |
| Pain and Suffering | 150,000.00 |
| Total | $299,265.43 |

Order, December 7, 1987 at 11. At the court's instruction, the parties submitted memoranda regarding the applicability of Florida's motor vehicle collateral source rule to the award.[3] The court held the collateral source rule applied in this case and found that Ganley had received $133,913.76 from his insurers for past medical expenses. The court initially determined that Ganley's proper measure of recovery equaled $15,718.96 (Table 1).

### TABLE 1

| | |
|---|---|
| Total Damages | $299,265.43 |
| Less: 50% Comparative Negligence | (149,632.71) |
| Less: Collateral Source Benefits | (133,913.76) |
| Adjusted Award | $ 15,718.96 |

Shortly after the court filed a final judgment in this amount on March 18, 1988, Ganley filed a motion to correct the judgment. The court reconsidered its methodology for adjusting damages and held that Ganley's collateral medical benefits could only be used to reduce the amount of past medical expenses. Thus, the court reduced Ganley's recovery for medical expenses (adjusted for his comparative negligence) by the amount of collateral benefits he received. Because Ganley received more collateral benefits than he proved, the court held his net recovery for medical expenses was zero. (Table 2).

### TABLE 2

| | Damages | Damages (Less 50%) | Collateral Source | Net Recovery |
|---|---|---|---|---|
| Medical Expenses | $124,265.43 | $62,132.76 | $133,913.76 | - |

**1.** In its answer, the government admitted that the postal employee was operating within the scope of employment at the time of the accident.

**2.** Both had violated Florida traffic law. Ganley was speeding on his motorcycle at the time of the accident and the postal employee failed to provide a proper left turn signal. Thus, the court apportioned responsibility pursuant to Florida's comparative negligence policy enunciated in *Hoffman v. Jones,* 280 So.2d 431 (Fla. 1973).

**3.** The court's concern was that the rule might not apply because Ganley's motorcycle is not within the definition of a "motor vehicle."

| | | | | |
|---|---|---|---|---|
| Lost Wages | 25,000.00 | 12,500.00 | - | 12,500 |
| Pain & Suffering | 150,000.00 | 75,000.00 | - | 75,000 |
| Adjusted Award | | | | $87,500 |

The court therefore entered an amended judgment for $87,500 in Ganley's favor. Order, July 8, 1988 at 4. The government filed a timely appeal.

## II. Florida's Motor Vehicle Collateral Source Rule

Traditionally, the collateral source rule prevented tortfeasors from deducting from damages any compensation an injured person received from independent sources for his injuries. The rule's underlying goal was to prevent a defendant from benefitting from insurance and other benefits a plaintiff received as a consequence of the defendant's wrongful act. The effect of the rule was that a plaintiff could recover from a tortfeasor and independent sources a sum that exceeded his or her actual damages.

A number of states have revised the rule to prevent plaintiffs from receiving excess damages resulting from collateral source benefits. Florida's motor vehicle collateral source rule provides that:

> In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.

*Id.* § 627.7372 (1984). Collateral sources means any payments made to a claimant, or on his behalf, by or pursuant to:

> (a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits.

> (b) Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits except life insurance benefits payable to the claimant, whether purchased by him or provided by others.

> (c) Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.

> (d) Any contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability.

*Id.* § 627.7372(2) (1984). Certain benefits, such as workers' compensation, Medicaid, and medical services administered by the Department of Health and Rehabilitative Services, are not collateral sources. *Id.* § 627.7372(3).

In *Blue Cross & Blue Shield of Florida, Inc. v. Matthews,* 498 So.2d 421 (Fla.1986), the Florida Supreme Court stated that the statute's purpose:

> is to prevent double recovery by plaintiffs of collateral source payments in personal injury suits arising from motor vehicle accidents. Under its terms, the plaintiff continues to claim full damages but the jury is instructed to subtract any collateral source payments from its damages verdict.

*Id.* at 422. The statute "merely limits the plaintiff's recovery to monies to which he is equitably entitled." *Id.* at 422–23.

The issue presented is whether Florida's motor vehicle collateral source rule requires a court or jury to set off collateral benefits for an item of damages against the total verdict or only against that portion of a verdict representing the same

item of damages. The government argues that the statute's clear language requires that all collateral benefits must be subtracted from the amount of all of the damages. The government therefore claims that it owes Ganley $15,718.96 as computed in Table 1. Ganley argues that the district court correctly deducted collateral benefits received for past medical expenses only against past medical expenses awarded. He asserts that he has not received duplicate recovery for any category of damages.

Although the Florida courts have yet to address this issue, a few other jurisdictions have. These jurisdictions generally support Ganley's position. *Tuenge v. Konetski*, 320 N.W.2d 420, 422–23 (Minn.1982) (offset does not apply to total verdict, only to same item of damages offset represents); *Davis v. Southern Farm Bureau Casualty Ins. Co.*, 406 So.2d 287, 290 (La. Ct.App.1981) (award of general damages for pain, suffering and disability not offset by medical expenses); *McIntire v. Gray*, 39 Or.App. 861, 593 P.2d 1273, 1275–76 (Ct. App.1979) (general damages for pain and suffering cannot be offset by PIP payments intended for out-of pocket expenses); *State Farm Mut. Auto Ins. Co. v. Coppersmith*, 97 Misc.2d 37, 410 N.Y.S.2d 975, 978 (N.Y.Civ.Ct.1978) (non-economic and economic losses are separate and cannot be offset).

The *Tuenge* decision is particularly relevant. In *Tuenge*, the jury returned a special verdict totalling $39,700.52 for the plaintiff consisting of: (a) lost wages, $3,063.60; (b) pain and suffering, $4,600.00; (c) future loss of earning capacity, $11,-036.92; and (d) future pain and suffering, $21,000.00. The plaintiff had received $11,-115.79 from her insurer for past wage losses but only proved $3,063.60 at trial. The trial court deducted the entire $11,115.79 from the total verdict pursuant to Minnesota's setoff statute [4] and entered judgment. The Supreme Court of Minnesota reversed holding that only that portion of the jury's special verdict allowing the plaintiff duplicate recovery was subject to an offset. The court stated:

> When the trial court deducted the full $11,115.79 it effectively invaded the plaintiff's recovery for uncompensated items of damage such as future wage loss and non-economic detriment. This result not only undermines the major thrust of the Act to promote full and not over-compensation, but also undermines a general state policy interest in seeing that tort victims are fully compensated.

*Id.* at 422. The court concluded that the offset provision should not penalize the plaintiff but "rather should operate only to the extent necessary to prevent duplicate recovery." *Id.* at 423.

We find the *Tuenge* court's reasoning persuasive and affirm the district court.[5]

4. Minn.Stat. § 65B.51(1) provides that any tort recovery arising out of an automobile accident be reduced by the amount of basic or optional economic loss benefits paid or payable. The statute's two primary purposes are to relieve the severe economic distress of uncompensated victims and to provide offsets to avoid duplicate recovery. 320 N.W.2d at 421.

5. We note, however, that the district court setoff the $133,913.76 collateral source against a measure of medical expenses adjusted for Ganley's negligence. Consistent with our holding, we believe the proper method is for the district court or jury to initially offset all items of damages for which there are corresponding collateral sources. Next, the court or jury should adjust the measure of net recovery in each category for the plaintiff's comparative negligence, if any. Table 3.

TABLE 3

| | Unadjusted Damages | Collateral Source | Net Recovery |
|---|---|---|---|
| Medical Expenses | $124,265.43 | $133,913.76 | - |
| Lost Wages | 25,000.00 | - | 25,000 |
| Pain & Suffering | 150,000.00 | - | 150,000 |
| | | | 175,000 |
| (Less: 50% Comparative Negligence) | | | 87,500 |
| Adjusted Award | | | $ 87,500 |

Under the facts of this case, the measure of recovery is the same under both the district

It makes no sense to diminish Ganley's recovery for pain and suffering and lost wages simply because he had the foresight to purchase insurance for his medical expenses.[6] Further, the statute's purpose of preventing plaintiffs from double recovery through collateral source payments is directly served in this case because Ganley has not received duplicate recovery for any category of damages. Instead, he has received the compensation to which he is entitled. AFFIRMED.

court's method and the method just described. This latter method, however, furthers the goal of promoting full, but not duplicate, recovery in situations where the amount of collateral source benefits are less than the amount of unadjusted benefits.

A more typical case is one where a plaintiff's medical damages are not fully covered by his own insurance. Thus if Ganley had only $80,000 by way of collateral sources the proper calculation would be as follows:

TABLE 4

| | Damages | Collateral Source | Net Recovery |
|---|---|---|---|
| Medical Expenses | $124,265.43 | $80,000.00 | $ 44,265.43 |
| Lost Wages | 25,000.00 | - | 25,000.00 |
| Pain & Suffering | 150,000.00 | - | 150,000.00 |
| | | | 219,265.43 |
| (Less: 50% Comparative Negligence) | | | 109,632.72 |
| Adjusted Award | | | $109,632.72 |

Using the district court's method, Ganley would receive only $87,500 versus $109,632.72 (Table 4). For this reason, we believe that a court should apply Florida's motor vehicle collateral source rule first and then adjust recovery for the parties' comparative negligence, if any.

6. The government's reading of the statute is too narrow because it would essentially prevent Ganley from recovering damages to which he is entitled. For example, if Ganley had successfully sued the government for only his pain & suffering and lost wages, the government's position would be that benefits from Ganley's health insurance policies (which paid for his medical expenses) could be used to offset these damage items. This position is untenable.