269 N.J. Super. 463 (1994)
635 A.2d 1004
DONALD R. SIKES, JR., PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF ROCKAWAY, AND JOHN C. DOLL, JR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1993.
Decided January 5, 1994.
*464 Before Judges SKILLMAN, KESTIN and WEFING.
Paul M. Selitto argued the cause for appellant (Pitman, Senesky, Nicola & Selitto, attorneys; Mr. Selitto, on the brief).
James J. Higgins argued the cause for respondents (Boyar, Higgins & Suozzo, attorneys; Mr. Higgins, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to determine the method by which the credit for payments from collateral sources required by the Tort Claims Act should be calculated in a case where a plaintiff has been found contributorily negligent.
*465 Plaintiff brought suit under the Tort Claims Act for injuries he suffered when his motorcycle collided with an ambulance being operated by defendant John C. Doll, an employee of defendant Township of Rockaway. Plaintiff presented evidence at trial of $40,173.14 of medical expenses and $5,000 of lost wages for which he had been reimbursed by medical and disability insurance. A jury found both plaintiff and defendants negligent and assigned each of them 50% responsibility for the accident. The jury also returned a lump sum verdict of $150,000 for all of plaintiff's damages.
The parties disputed the proper method of molding this verdict. Defendants argued that the $150,000 jury verdict should be molded to $75,000 to reflect plaintiff's contributory negligence, and that the $45,173.14 paid by collateral sources should be deducted from this amount, yielding a net recovery to plaintiff of $29,826.86. Plaintiff argued that because he was only entitled to recover 50% of his damages due to his contributory negligence, the credit for the payments he received from collateral sources also should be reduced by 50%, thus yielding a net recovery of $52,413.43.
The trial court ruled in favor of defendants on this issue and entered judgment for plaintiff in the amount of $29,826.86. Although our analysis differs somewhat from the one urged by plaintiff, we conclude that the jury verdict should have been molded to yield a net recovery to plaintiff of $52,413.43.
Before discussing the meritorious issue presented by this appeal, we must consider plaintiff's argument that the trial court committed reversible error by denying his request for special interrogatories under which the jury would have been asked to return a separate verdict for his medical expenses and lost wages. We are satisfied that this argument is not properly before us. Plaintiff's notice of appeal stated that he was appealing "regarding credit to be received under the Tort Claims Act." Plaintiff sent a letter to the clerk of this court, dated December 7, 1992, reiterating that "the scope of plaintiff/appellant's appeal will only include the issues raised during the motion of July 10, 1992; that is, the *466 credit, if any, to be given to the defendant/respondent under the Tort Claims Act." Consistent with this limitation upon the scope of his appeal, plaintiff did not file the trial transcript with this court. As a result, we have not had the opportunity to review the parts of the trial transcript relating to plaintiff's damages claims, or even the trial court's reasons for denying plaintiff's request to submit separate jury interrogatories regarding his various damage claims. Therefore, the only issue before us is the proper method of calculating the credit to defendants for payments from collateral sources.
The credit for payments from collateral sources is required in suits under the Tort Claims Act by N.J.S.A. 59:9-2(e), which provides in pertinent part:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant....
The comment to N.J.S.A. 59:9-2(e) indicates that its intent is "to prohibit the receipt of duplicate benefits by a claimant." Report of the Attorney General's Task Force on Sovereign Immunity, comment on N.J.S.A. 59:9-2, at 234 (1972). Consequently, N.J.S.A. 59:9-2(e) must be interpreted to effectuate this intent. Ayers v. Township of Jackson, 202 N.J. Super. 106, 126-27, 493 A.2d 1314 (App.Div. 1985), aff'd in part, rev'd in part, 106 N.J. 557, 525 A.2d 287 (1987).
We note initially that a plaintiff in a suit under the Tort Claims Act may withhold the presentation of any evidence of damages for which payment has been received from collateral sources. See Hayes v. Pittsgrove Township Bd. of Educ., 269 N.J. Super. 449, 454, 635 A.2d 998 (App.Div. 1994). If plaintiff had followed this course, his damage award presumably would have been $104,826.86 (the $150,000 awarded by the jury less the $45,173.14 paid by collateral sources). In that event, plaintiff unquestionably would have been entitled to a molded verdict of *467 $52,413.43 (50% of $104,826.86). Similarly, if plaintiff's damage claims had been submitted to the jury under separate interrogatories, as plaintiff had requested, and the jury had returned a verdict of $45,173.14 for plaintiff's medical expenses and wage losses paid by collateral sources and $104,826.86 for his pain and suffering and other damages for which there were no collateral source payments, the credit required by N.J.S.A. 59:9-2(e) would have been properly effectuated by simply deducting the $45,173.14 received from the collateral sources from the separate jury award reflecting those same damages. This would have resulted in plaintiff being awarded 50% of the $104,826.86 jury award for those damages for which there were no collateral source payments, that is, $52,413.43. We are unable to perceive any reason in logic or in the policy of N.J.S.A. 59:9-2(e) why the calculation of the credit for payments from collateral sources should be different simply because the jury returned a lump sum verdict which presumably included the stipulated medical expenses and wage losses for which plaintiff received payments from collateral sources.
In addition, the deduction from the jury verdict of the payments plaintiff received from collateral sources before molding the verdict to reflect plaintiff's contributory negligence is required to preserve plaintiff's contractual rights to those insurance proceeds. If plaintiff had incurred no medical expenses and suffered no wage loss as a result of the accident, and the jury had awarded him $104,826.86 for his pain and suffering, he would have been entitled to a molded verdict of $52,413.43. Plaintiff's entitlement to an additional $45,173.14 for the medical expenses and wage loss which he in fact suffered was purely contractual, and in no way dependent upon the outcome of his suit against defendants. Yet if the trial court's method of calculating the credit required by N.J.S.A. 59:9-2(e) was sustained, plaintiff's net recovery of these contractual benefits would be reduced by 50% in the same manner as his other damages. In that event, plaintiff's total recovery of $75,000, consisting of $45,173.14 in insurance benefits plus a $29,826.86 recovery from the defendants, would be the same amount he *468 would have received if he had no insurance, thereby effectively depriving him of 50% of the medical and disability insurance benefits to which he was contractually entitled. This result would be inconsistent with the intent of N.J.S.A. 59:9-2(e), which is to prevent an injured party from receiving a duplicate recovery from both his own insurance carrier and a public tortfeasor, but not to prevent him from retaining the full amount of his contractual benefits.
This case presents a significantly different issue than Ayers v. Township of Jackson, supra, 202 N.J. Super. at 126-27, 493 A.2d 1314, aff'd o.b. on this issue, 106 N.J. at 612, 525 A.2d 287, in which the court concluded that the amount received by a plaintiff through a settlement with an alleged tortfeasor, who was later determined not to be liable, should be deducted from the ultimate jury award in order to effectuate the policy of N.J.S.A. 59:9-2(e) of preventing an injured party from receiving an aggregate recovery which exceeds his actual damages. See also Kiss v. Jacob, 268 N.J. Super. 235, 244-50, 633 A.2d 544 (App.Div. 1993). In contrast, interpreting N.J.S.A. 59:9-2(e) to allow a contributorily negligent injured party to retain the full amount of his contractual insurance benefits does not result in an aggregate recovery in excess of his actual damages. For example, under our interpretation of N.J.S.A. 59:9-2(e), plaintiff's aggregate recovery will be $97,586.57, consisting of $45,173.14 in insurance benefits and a $52,413.43 recovery from defendants, which is substantially less than the $150,000 in total damages which the jury determined plaintiff had suffered.
Finally, we note that our interpretation of N.J.S.A. 59:9-2(e) is consistent with the interpretation of similar statutes in other jurisdictions. See, e.g., Ganley v. United States, 878 F.2d 1351 (11th Cir.1989); City of Wilkes-Barre v. Zaledonis, 125 Pa. Cmwlth. 392, 557 A.2d 836, 838 (1989); see also Tuenge v. Konetski, 320 N.W.2d 420, 422-23 (Minn. 1982). Contra Jeffers v. Phillips Ready Mix, 72 Ohio App.3d 62, 593 N.E.2d 443, 445-46 (1991).
*469 Accordingly, we reverse the part of the judgment reflecting the calculation of the credit required by N.J.S.A. 59:9-2(e) and remand for entry of an amended judgment in conformity with this opinion.