**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3909-15T3

BENJAMIN B. TAYLOR,

    Plaintiff-Appellant,

v.

MARIA E. JONES,

    Defendant-Respondent.

_____

Submitted April 5, 2017 — Decided August 29, 2017

Before Judges Fuentes and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-3657-15.

Benjamin B. Taylor, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this non-dissolution case,[1] plaintiff appeals from the March 30, 2016 order of the Family Part denying his motion for

---

[1] The non-dissolution or FD docket provides a mechanism for parents not married to each other to seek custody, parenting time, paternity, and child support. R.K. v. D.L., 434 N.J. Super. 113, 131 (App. Div. 2014).

reconsideration. We affirm substantially for the reasons set forth by Judge Michael C. Gaus in his comprehensive and well-reasoned oral opinion.

Plaintiff (father) and defendant (mother) were unmarried but lived together in plaintiff's Maplewood home for approximately two years before their daughter was born in October 2014. In April 2015, the parties separated and plaintiff filed an order to show cause claiming that he was being denied shared custody and parenting time. Plaintiff's disagreement with defendant's breast-feeding and attachment parenting philosophy became the overarching issue in arranging for shared custody and parenting time after the parties separated.

Thereafter, both parties filed dueling applications, including defendant's application for child support. Effective May 8, 2015, Judge Gaus established plaintiff's child support obligation as $173 per week plus $17 towards arrears. As to custody and parenting time issues, the parties agreed to participate in private mediation. However, mediation failed and Judge Gaus thereafter conducted a plenary hearing that spanned a total of six non-sequential hearing dates from November 30, 2015 to January 28, 2016.

On February 9, 2016, Judge Gaus rendered a comprehensive oral opinion. Preliminarily, the judge found defendant "to be highly

credible based upon her demeanor, a consistency of her answers, the straightforward manner in which she provided responses" and "her sincere interest in what she believes is best for [their daughter], including being fully supportive of moving the custodial arrangement into a fully shared custody arrangement." On the other hand, the judge found plaintiff's testimony "not credible in many areas" noting:

> [a]t times, he appeared to be disingenuous, particularly based in his demeanor; his hesitation in providing answers; his avoidance during cross[-]examination; and most importantly, the distortion of his intentions as evidenced by his desire to drive this case by economics and his efforts to avoid financial responsibility wherever possible.
>
> Also his belated offers to become more accommodating to the defendant's continuing need to breast[-]feed came way too late in the process. Earlier in the proceeding it had been his position that her breast[-]feeding was simply another effort on her part to control him, to control their family dynamic, and to control the building of his relationship with the child. It's that type of inconsistent positions throughout the proceedings that caused the [c]ourt to consider [defendant's] testimony to be much more credible than that of [plaintiff].

Next, applying the factors enumerated in N.J.S.A. 9:2-4(c), the judge ordered the parties to share legal and physical custody of their daughter, with defendant being designated "the parent of primary residence for purposes of establishing the child's legal

3

domicile." The judge entered a detailed shared parenting plan order incorporating the gradual implementation of equal parenting time beginning in 2017 as the child was "weaned from her breast feeding."

Utilizing the Child Support Guidelines (Guidelines) for a shared parenting child support award, Judge Gaus increased plaintiff's child support obligation to $192 per week, effective February 9, 2016, based on an annual salary of $81,060 for plaintiff and $52,000 for defendant. The judge ordered further that on January 1, 2017, defendant's child support obligation would be automatically reduced to $30.05 per week as a result of the full implementation of the equal shared parenting time plan.

In assessing the parents' income, the judge determined that plaintiff was "substantially [underemployed]" working as "a part-time athletic trainer[,] . . . part-time desk manager of a gym here and there[,] and then running his own wealth management business on the side." Crediting defendant's unrebutted testimony that plaintiff earned "six figures" when he worked "in New York City" in the financial services industry "approximately [fifteen] years ago[,]" the judge found that plaintiff's current "wealth management duties, which he described as significantly involving 'reading newspapers and watching videos'" showed "a lack of desire

. . . to work and supply as best he can through his financial[] abilities for his family."

The judge imputed income to plaintiff based on his profession as a Personal Financial Advisor, which "according to the Department of Labor's Statistics category 13-2052 is someone who advises clients on financial plans using knowledge of tax and investment strategies, securities, insurance, pension plans and real estate" and which "[d]uties include assessing clients' assets, liabilities, cash flow, insurance coverage, tax status, and financial objectives." However, the judge imputed to plaintiff the "median income level" of $81,060 annually, rather than "the mean annual wage" of $108,090 as "more consistent with what might be realistically expected from [plaintiff]." Based on her tax returns for 2012, 2013, and 2014, the judge also imputed income to defendant, noting that while the court understood "her desire to be home with her child, that is something that simply cannot continue on an extended basis" as "[t]here is simply no reason why she has not yet returned to work full time at this point."

When the child support guidelines were run, the judge also provided other dependent deductions for both parties. Plaintiff received an other-dependent deduction for his two older children and defendant received an other-dependent deduction for her son who was a full-time college student. Although over the age of

eighteen, defendant's son was attending Rutgers University on a full-time basis on an athletic scholarship. However, his scholarship did not cover all of his needs.

Plaintiff filed a motion for reconsideration arguing that defendant should not have been granted a dependent care deduction because her son was an emancipated adult age child. Plaintiff also argued that the court should not have imputed income to him above what he actually earned. In the alternative, plaintiff argued that the court should have imputed the income of a Financial Analyst, rather than a Personal Financial Advisor.

The judge denied the motion for reconsideration and issued a comprehensive and well-reasoned oral opinion rejecting plaintiff's arguments. Judge Gaus began his analysis by citing Rule 4:49-2 and applying the well-settled legal principles for deciding a motion for reconsideration. As framed by Judge Gaus, plaintiff's motion for reconsideration claimed: (1) "defendant should not have been granted another dependent deduction when the guidelines were run" because her son was an "'emancipated adult age child[;]'" and (2) "the [c]ourt should not have imputed income to [plaintiff] above what he actually earns" and "if the [c]ourt did . . . impute income to him, . . . it should have used Bureau of Labor Statistic category 13-2051 Financial Analyst instead of 13-2052 a Personal Financial Advisor."

A-3909-15T3

As to the propriety of the other-dependent deduction, Judge Gaus explained:

> There is no dispute but that this child is in fact a full-time college student. He's on an Athletic Scholarship at Rutgers. The testimony was accepted by the [c]ourt that he utilizes his mother's home as his primary residence when he is not at school. That entitles her to then seek out the other dependent deduction.
>
> If this was a matter of calculating child support for that child, we would not use the guidelines when it comes to determining what would be appropriate child support for that child, because we don't use the guidelines for someone who is over [eighteen] years of age and is living away at college on a full-time basis.
>
> But we were not calculating child support for that child. We were simply factoring in the other dependent deductions.
>
> So the [c]ourt is satisfied, first, that the child is not emancipated, which really was the only argument that the . . . plaintiff raised in his application. And then when he rose to speak today, he also then started to argue that in fact the child does not live there. We've addressed that as well, a parent is expected to keep a home for their child available and there are ongoing expenses associated not only with keeping the home available, but also continuing to support a child when they are a full-time live away student at college, even one who is on an Athletic Scholarship and who may well have a stipend beyond that.

As to the propriety of imputing income to plaintiff rather than accepting plaintiff's "actual income[,]" initially, Judge

Gaus reiterated his finding that plaintiff was intentionally underemployed because he "has the ability to work in the financial field in a way that would bring much more money into the household." Recounting plaintiff's trial testimony that his job entailed "read[ing] newspapers" and "listen[ing] to podcasts[,]" the judge determined that plaintiff "wanted to minimize what it is that he does in order to try to justify the significantly lower amount of income that he earns than what the Bureau of Labor Statistics suggest[s] that he should be earning."

"[T]urning to the issue of whether the [c]ourt should have used [the] category [of] Financial Analyst or Personal Financial Advisor[,]" Judge Gaus determined that he "properly concluded that the Personal Financial Advisor category was more appropriate because the plaintiff does much more than simpl[y] analyze the numbers, which is . . . the main description for Financial Analyst." Judge Gaus reasoned that plaintiff

> actually manages money on behalf of his clients. And that seems to fit much more into the Personal Financial Advisor category, even if you cut out the insurance component.
>
> But beyond that, the [c]ourt imputed income to the defendant at the median level . . . and that income is $81,060. Even if I had use[d] the Financial Analyst category, I still would have stayed at the [fifty] percent category and that income is $78,620. So it's certainly not in any way materially different

than the amount of income that was imputed to the [plaintiff].

. . . .

[T]his is somebody who is in fact in the . . . midst of the prime part of his career. He started doing this work back in the late '90s, the early 2000's. Although, he didn't submit at trial his W-2s and his taxes from when he worked at Lehman Brothers. He did testify that he was there in the late '90s, the early 2000's . . . .

So the [c]ourt is satisfied that whether it should have been the Financial Analyst category or the Personal Financial Advisor category, the [fifty] percent level was appropriate for somebody who has been at this job and this career area for [fifteen], [sixteen], [seventeen] years. And whether it was [$]81,000 or [$]78,000 is not material. Although, the [c]ourt is satisfied that the Personal Financial category was the more appropriate.

Judge Gaus entered a memorializing order on March 30, 2016[2] and this appeal followed.

On appeal, plaintiff renews the same arguments he presented to Judge Gaus. Because plaintiff's notice of appeal identified only the March 30, 2016 order denying reconsideration, our review is limited to that order. See R. 2:5-1(f)(3)(A); Pressler, Current N.J. Court Rules, comment 6.1 on R. 2:5-1 (2016) (citing Sikes v.

_____

[2] As of the entry of the March 30, 2016 order, plaintiff's arrears totaled $4,329.13.

Twp. of Rockaway, 269 <u>N.J. Super.</u> 463, 465-66 (App. Div.), <u>aff'd</u> <u>o.b.</u>, 138 <u>N.J.</u> 41 (1994).

Turning to the court's denial of plaintiff's reconsideration motion, such motions are governed by <u>Rule</u> 4:49-2. "Reconsideration . . . is 'a matter within the sound discretion of the Court, to be exercised in the interest of justice[.]'" <u>Palombi v. Palombi</u>, 414 <u>N.J. Super.</u> 274, 288 (App. Div. 2010) (quoting <u>D'Atria v. D'Atria</u>, 242 <u>N.J. Super.</u> 392, 401 (Ch. Div. 1990)). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." <u>D'Atria</u>, <u>supra</u>, 242 <u>N.J. Super.</u> at 401. Reconsideration is only appropriate if "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]" <u>Cummings v. Bahr</u>, 295 <u>N.J. Super.</u> 374, 384 (App. Div. 1996) (quoting <u>D'Atria</u>, <u>supra</u>, 242 <u>N.J. Super.</u> at 401).

Reconsideration is not appropriate as a vehicle to bring to the court's attention evidence that was available but not presented in connection with the initial argument. <u>Fusco</u>, <u>supra</u>, 349 <u>N.J. Super.</u> at 463. Rather, a motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, <u>R.</u> 1:7-4, not to serve as a vehicle to

introduce new evidence in order to cure an inadequacy in the motion record. Cummings, supra, 295 N.J. Super. at 384. Similarly, reconsideration cannot be used to merely "reargue a motion[,]" Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div.), certif. denied, 195 N.J. 521 (2008), but rather to point out "the matters or controlling decisions which [the litigant] believes the court has overlooked or as to which it has erred[.]" R. 4:49-2.

We review the denial of a motion for reconsideration under the abuse of discretion standard. Cummings, supra, 295 N.J. Super. at 389 (citing CNF Constructors, Inc. v. Donohoe Constr. Co., 57 F.3d 395, 401 (4th Cir. 1995)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

We have carefully considered the record in this matter and affirm substantially for the reasons set forth in the thorough and thoughtful opinion of Judge Gaus.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3909-15T3