NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5038-13T3

LIONELL MILLER,

 Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

 Respondent.

________________________________________

 Submitted August 1, 2017 – Decided November 30, 2017

 Before Judges Sabatino and O'Connor.

 On appeal from the New Jersey Department of
 Corrections.

 Lionell Miller, appellant pro se.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Lisa A. Puglisi,
 Assistant Attorney General, of counsel;
 Gregory R. Bueno, Deputy Attorney General,
 on the brief).

PER CURIAM

 Appellant Lionell Miller, presently an inmate at East

Jersey State Prison, claims while incarcerated at New Jersey
State Prison (NJSP), his word processor and television were

damaged by the correctional facility's staff. Following its

investigation, respondent Department of Corrections (DOC)

determined there was no evidence the staff was responsible for

the alleged damage, and denied Miller's claim the DOC pay the

cost to replace both items.

 Miller filed a notice of appeal challenging the denial of

his claim pertaining to the word processor. Although he

indicated in his merits brief he was also appealing from the

denial of his separate claim the DOC reimburse him the cost of

his television, Miller never filed a notice or amended notice of

appeal challenging such denial.1 Accordingly, we decline to

consider this discrete claim. As for the claim concerning the

damaged word processor, we reverse and remand for further

proceedings.

 I

 A

 We first address Miller's claim the staff damaged his word

processor. In November 2013, Miller obtained permission from

the staff to mail his word processor to the vendor to be

1
 We address the procedural history, which is somewhat atypical,
in more detail below.

 2
 A-5038-13T3
repaired. Although the word processor worked, there was a

problem with the keyboard, which caused the keys to "freeze up"

on occasion. There also was a small incision in the input cord.

 On February 27, 2014, Miller gave Corrections Officer

Watson the unpackaged word processor so it could be mailed from

the facility's mail room. The word processor was later packaged

for delivery in the mail room. Although outgoing mail is to be

sent to the post office within one day of being received in the

mail room, excluding weekends, holidays, and during emergency

incidents, see N.J.A.C. 10A:18-5.6(b), Miller's word processor

was not mailed out for two weeks.

 On March 25, 2014, Miller received a letter from the

vendor's employee informing him the word processor was badly

damaged when the employee opened the package at the vendor's

location, and could not be repaired. The employee opined the

word processor had been "severely" damaged during shipping, but

did not elaborate upon why he believed the damage occurred

during shipping.

 But the employee made the additional observation,

suggesting the manner in which the word processor was packaged

caused the loss. He stated, "When we opened the box, the

monitor was basically sitting on top of the keyboard. This

resulted in the damage of about a dozen of the keys on the
 3
 A-5038-13T3
keyboard as well as the breaking of the clear plastic cover."

The vendor provided pictures of the damaged keyboard, keys, and

plastic cover.

 Miller submitted a claim to the DOC for damaging his word

processor, requesting compensation of $595, the cost of this

item when he purchased it new in 2009. In his claim, Miller

referenced the vendor's letter and alleged the facility's staff

had damaged the word processor before it was mailed to the

vendor.

 As part of the DOC's investigation, a Sergeant Patterson

interviewed Miller and a "property room officer" named Watson.2

Watson told Patterson the word processor was shipped out for

repair on February 21, 2014 and returned, unrepaired, in April.

Sergeant Smith authored a memo in which he merely stated in

conclusory fashion, "This Word Processor was not damaged in the

property area."

 On May 20, 2014, Lieutenant Gerdes, an administrative

lieutenant of the NJSP, issued a "Disposition of Inmate Claim,"

in which he denied Miller's claim for damage to his word

processor. Gerdes' only comments were, "The investigation did

2
 The record does not reveal the first names of several of the
DOC staff members. We intend no disrespect by referring to them
by just their last names.
 4
 A-5038-13T3
not reveal any neglect by the Correctional Facility. The item

was not damaged in the property area."

 On July 1, 2014, Miller appealed from this determination.

After filing his merits brief, the DOC filed a motion to remand

this matter because the NJSP's business manager and

administrator had not reviewed Miller's claim before it was

denied, as required by N.J.A.C. 10A:2-6.1(d) and (e). We

granted the motion and, in our remand order, directed the DOC to

fully comply with N.J.A.C. 10A:2-6.2(a) and make specific

findings as to (1) whether the investigation revealed any

neglect by the facility staff, and (2) whether the staff

exercised care to prevent property loss, damage, or destruction.

 Thereafter, the business manager and administrator reviewed

and rejected Miller's claim. The business manager's findings

consisted of the following statement: "Based on [the] claim form

submitted by Inmate Miller and reports written, no evidence has

been submitted to substantiate the claim that the word processor

was damaged by DOC staff."

 On September 16, 2015, the administrator of the NJSP issued

a final agency decision, which consisted solely of the following

statement. "It is impossible to determine if the damage

occurred after the [word processor] was mailed from NJSP. It is

possible that the package was mishandled by the mail carrier."
 5
 A-5038-13T3
 B

 As for the claim pertaining to his television, Miller

contends, while in detention and administrative segregation for

a period in 2014, the staff removed his television set from his

cell and intentionally damaged it. He contends he submitted a

claim to the DOC for $181.17, the cost to replace the

television. On August 8, 2014, his claim was denied. Miller

did not file an amended notice of appeal pursuant to Rule 2:5-1

challenging this denial, merely addressing such claim in his

merits brief. The DOC filed a motion to again remand this

matter, asserting Miller never filed a claim for loss to the

television, but, for the sake of "judicial economy," requested a

remand to investigate the claim so it could issue a final agency

decision.

 On January 13, 2016, we granted this motion. In our order

we stated, among other things, that if the DOC ruled adversely

to Miller on his claim concerning the alleged damage to his

television, he had forty-five days to file an amended notice of

appeal to include the separate final agency decisions as to both

the television and the word processor.

 On July 21, 2016, the NJSP's administrator "disapproved"

Miller's claim on the ground he had not submitted any claim for

the alleged damage. Miller did not file an amended notice of
 6
 A-5038-13T3
appeal to include the denial of the claim pertaining to the

television.

 II

 On appeal, Miller contends the DOC failed to properly

investigate his claims, as required by N.J.A.C. 10A:2-6.1. and

10A:2-6.2 and, therefore, the DOC's determinations his claims

lacked merit were arbitrary and capricious.

 We readily dispose of Miller's claim pertaining to the

television. Rule 2:4-1(b) requires an appeal from "final

decisions or actions of state administrative agencies or

officers . . . shall be taken within 45 days from the date of

service of the decision or notice of the action taken." Miller

never appealed from and, thus, we have no jurisdiction to review

the denial of this particular claim. Sikes v. Twp. of Rockaway,

269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41

(1994).

 We now turn to Miller's contention the DOC failed to

properly investigate his claim the staff caused damage to his

word processor, rendering the DOC's rejection of this claim

arbitrary and capricious.

 We recognize our role on review is limited. Our function

is to determine whether the administrative action under review

was arbitrary, capricious, or unreasonable. See Henry v. Rahway
 7
 A-5038-13T3
State Prison, 81 N.J. 571, 580 (1980). We will only decide

whether the findings could reasonably have been reached on the

credible evidence in the record, considering the proofs as a

whole. See Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).

 Nevertheless, our review is not "perfunctory," nor is "our

function . . . merely [to] rubberstamp an agency's decision[.]"

Figueroa v. New Jersey Dep't of Corr., 414 N.J. Super. 186, 191

(App. Div. 2010). "[R]ather, our function is 'to engage in a

careful and principled consideration of the agency record and

findings.'" Ibid. (citation omitted).

 To enable us to exercise this function, the agency must

provide a reasonable record and statement of its findings.

Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 63 (App.

Div.), certif. denied, 162 N.J. 196 (1999). "[W]e insist that

the agency disclose its reasons for any decision, even those

based upon expertise, so that a proper, searching, and careful

review by this court may be undertaken." Balagun v. N.J. Dep't

of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003).

 Turning to the regulations that govern the outcome here,

N.J.A.C. 10A:2-6.1(b)(1) provides that when an inmate at a

correctional facility claims damage to his personal property,

there must be an investigation that includes, but is not limited

to, obtaining statements from the inmate, witnesses, and
 8
 A-5038-13T3
correctional facility staff. Further, a report of the

investigation must be prepared. N.J.A.C. 10A:2-6.1(b).

 Thereafter, the business manager of the correctional

facility must review the investigative report and recommend,

with substantiating reasons, either the approval or denial of

the claim. N.J.A.C. 10A:2-6.1(c) and (d). Following the

issuance of the business manager's recommendation, the

administrator of the correctional facility reviews the matter,

see N.J.A.C. 10A:2-6.1(e). If a claim is denied, the

administrator must provide substantiating reasons, see N.J.A.C.

10A:2-6.1(f). Several factors must "be considered before

recommending [the] approval or disapproval of claims." N.J.A.C.

10A:2-6.2(a). These factors include whether the investigation

revealed neglect by the correctional facility, N.J.A.C. 10A:2-

6.2(a)(1), and whether care was exercised by facility staff to

prevent the loss, damage or destruction to the property,

N.J.A.C. 10A:2-6.2(a)(2).

 Here, the administrator does not provide substantiating

reasons for denying the claim pertaining to the word processor.

He merely states in conclusory manner that it is "impossible" to

determine if the damage occurred after the word processor was

mailed from NJSP, and that it is possible the package was

mishandled by the mail carrier, but provided no analyses of how
 9
 A-5038-13T3
he arrived at these two conclusions. To be sure, the NJSP is

not claiming the word processor was damaged to the extent

observed by the vendor when still in Miller's possession or that

the vendor caused the damage. Thus, the opportunity for the

word processor to have become damaged was limited to when the

word processor was in the NJSP's possession or during its

shipment.

 Notwithstanding the limited opportunities for the word

processor to have become damaged, the administrator fails to

address the unrefuted evidence that the correctional facility

staff packaged the word processor and placed the monitor on top

of the keyboard before sealing and sending the package for

shipment. The packaging of the word processor calls into

question whether the keyboard sustained damage as a result of

the weight of the monitor. There is no indication those who

conducted the investigation inquired into why the staff packaged

the word processing in such manner and whether the way this item

was placed in the box for shipment caused the damage. There is

also no indication the DOC looked into how the word processor

was packaged to protect it during shipment.

 Those who participated in the investigation merely provided

perfunctory, conclusory statements that yielded no significant

information. The administrator knew or should have known the
 10
 A-5038-13T3
investigation failed to provide him with sufficient evidence to

draw any meaningful conclusions. In short, the DOC failed to

comply with the relevant requirements in N.J.A.C. 10A:2-6.1 and

6.2, not to mention our remand order directing the DOC make

specific findings as to (1) whether the investigation revealed

any neglect by the facility staff, and (2) whether the staff

exercised care to prevent property loss, damage, or destruction.

 Because DOC's decision is not based upon credible evidence

in the record, it is arbitrary, capricious, and unreasonable.

Accordingly, we reverse the May 20, 2014 final agency decision

denying Miller his claim for compensation for the damage caused

to his word processor, and remand this matter to the DOC to

engage in an investigation and fact-finding mandated by the

applicable regulations.

 Reversed and remanded for further proceedings consistent

with this opinion. The remand shall be completed no later than

January 16, 2018. If Miller is aggrieved by the outcome of the

remand, he must file any new appeal within forty-five days of

the final agency decision. We do not retain jurisdiction.

 11
 A-5038-13T3