**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1482-17T3

RICHARD BAKER,

    Plaintiff-Appellant,

v.

CAMDEN COUNTY
HIGHWAY DEPARTMENT,

    Defendant-Respondent.

_____

Submitted October 31, 2018 – Decided November 8, 2018

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4146-14.

Costello & Mains, LLC, attorneys for appellant (Deborah L. Mains, on the brief).

Christopher A. Orlando, Camden County Counsel, attorney for respondent (Anne E. Walters, Assistant County Counsel, on the brief).

PER CURIAM

Plaintiff Richard Baker appeals from a November 8, 2017 order denying reconsideration of the summary judgment dismissal of his complaint, pursuant to the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, against defendant Camden County Highway Department. We affirm.

The following facts are taken from the record. Plaintiff has been employed by defendant since 2007. He holds a commercial driver's license (CDL) and is authorized to operate equipment. On December 7, 2012, plaintiff struck his head on an I-beam inside a supply warehouse and fell down a flight of stairs, injuring himself. As a result, plaintiff was absent from work on medical leave from the date of the accident until September 2013. During this time plaintiff collected workers' compensation.

Plaintiff was medically cleared to return to work in September 2013. When plaintiff returned to work, he claimed he was discriminated against because he had availed himself of workers' compensation benefits. He claimed he was singled out by his supervisor for verbal abuse, barred from entering the supply warehouse, and made to stand outside the building, ring a bell, and request the items he needed.

Plaintiff claimed he was not permitted to return to his prior position inside the highway department yard, but made to perform work "on the road," including

mowing and trimming. Plaintiff alleged his supervisor verbally harassed him, accused him of intentionally injuring himself, and being a "drug addict" for taking pain medication. Plaintiff complained about his supervisor's conduct and sought a transfer, but it was denied.

On August 7, 2013, plaintiff and eight coworkers were randomly selected to undergo drug testing pursuant to defendant's policy. The drug tests are administered by an independent third-party, which utilizes software to randomly select employees for testing. If an employee tests positive for an illicit substance, the medical testing provider contacts the employee to afford the employee an opportunity to provide a list of medications, which may have had an effect on the test result. Plaintiff's drug test was performed on October 21, 2013, and revealed he tested positive for amphetamines. Pursuant to defendant's policy, plaintiff was notified of the positive result. On October 23, 2013, he informed the testing facility he was taking Nexium, Sudafed, Motrin, and a nasal spray. This information was reviewed by the testing facility and determined to be unavailing. Therefore, on October 25, 2013, the testing facility notified defendant of the positive test for amphetamines.

On October 29, 2013, defendant served plaintiff with a preliminary notice of discipline, charging him with: conduct unbecoming of a public employee,

violation of federal regulations concerning drug and alcohol use, and violation of a Camden County policy. The notice advised plaintiff of his right to seek a departmental hearing however, plaintiff, who was represented by an attorney, did not seek a hearing. Instead, on January 27, 2014, plaintiff entered into a settlement agreement whereby he agreed to accept a five-month suspension and complete eight substance abuse educational sessions.

Plaintiff filed a complaint, which alleged defendant discriminated against him based upon a disability, perception of disability, and retaliation. Specifically, plaintiff alleged defendant discriminated against him for availing himself of workers' compensation and based on a perception of disability, by requiring him to perform less desirable road work, and barring him from the supply warehouse. Plaintiff alleged defendant retaliated against him by requiring he submit to the drug test. Plaintiff asserted the testing was not random, but targeted, and claimed defendant did not follow its own policy of awaiting the testing facility's review of the medications plaintiff was taking as potentially exculpatory evidence before taking disciplinary action.

Following the completion of discovery, which also included the deposition of plaintiff and three supervisors, defendant filed a motion for summary judgment. The motion judge rejected plaintiff's claim defendant had

4

retaliated against him for accepting workers' compensation. The judge noted "[d]efendant points out that there were other instances where plaintiff availed himself of worker[s'] compensation benefits and no retaliation took place."

The judge also rejected plaintiff's claim that defendant had retaliated against him by targeting him for drug testing. The judge detailed the testing process. He described how it was conducted by an independent third-party, which maintains "a database with eligible Camden County employees with CDL's which are updated by the county . . . in order to ensure a lack of bias in the selection process." The judge noted that nine other employees were also randomly selected with plaintiff, including an employee plaintiff claimed had been harassing him. The judge also described how the test results were reviewed by a qualified scientist, and plaintiff was afforded the opportunity to provide the testing facility with an explanation for the positive test results. The judge noted plaintiff did not dispute the drug test and instead entered into a settlement agreement and agreed to a suspension.

The judge concluded there was no direct or circumstantial evidence of discrimination based upon perception of disability. He noted after plaintiff's injury and convalescence he "was cleared to return to work fulltime, at full duty." The judge further found "no evidence [plaintiff] was forced to labor

5

under unreasonable conditions . . . [o]r that someone else was hired to perform his work."  The judge concluded:

> There's no evidence that the drug test and subsequent discipline were in retaliation for plaintiff's receiving worker[s'] compensation benefits.  Or that the plaintiff was able to show any link between . . . the random drug test and plaintiff's going out on worker[s'] compensation as a result of the December 7th injury.

The judge also dismissed plaintiff's punitive damages claim.  The judge found the statements made by plaintiff's supervisors were not harassing, egregious, or evidence of "wantonly, reckless, or malicious action" to warrant consideration of punitive damages.

Following the entry of summary judgment, plaintiff filed a motion for reconsideration.  Plaintiff argued the motion judge misinterpreted his complaint as asserting a hostile work environment.  Plaintiff also argued the motion judge believed defendant could terminate him for testing positive for amphetamines, which misinterpreted defendant's drug testing policy.  Plaintiff argued the judge incorrectly found no evidence of perceived disability discrimination, and incorrectly concluded defendant could rely on an "[i]nadmissible double hearsay document to prove plaintiff was using illegal drugs."

The judge noted he did not decide the matter as a hostile work environment claim because "plaintiff was alleging discriminatory retaliation and

a perception of disability discrimination." The judge repeated his finding that plaintiff had failed to demonstrate any evidence of retaliation for seeking workers' compensation.

The judge rejected plaintiff's argument summary judgment was granted only because plaintiff had tested positive for amphetamines. After repeating the description of the drug testing procedure utilized on plaintiff and his coworkers, the judge concluded:

> [T]he facts belie plaintiff's claim in that he hasn't explained the pain medication. He hasn't explained the amphetamine. He chose to accept the settlement agreement. He argues that he was forced to do so in order to keep his job, but nonetheless on such an important issue if he had a legitimate reason for taking the amphetamine, that should have been put forth.
>
> I find that there was confirmation that the County had concerning [illicit] drug use; took the action based on that and nothing really changed after that factually in terms of any action on plaintiff's part to establish what drug and what . . . prescription [he had].
>
> Plaintiff was represented by an attorney, accepted the action and cannot now complain or go back and . . . visit those facts, again, when he entered into the settlement agreement.

The judge denied plaintiff's motion for reconsideration. This appeal followed.

I.

At the outset, we note our review is limited to the November 8, 2017 order, which denied plaintiff's motion for reconsideration. "While [Rule 2:5-1(f)(1)] does not in terms so provide, it is clear that it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(f)(1) (2019) (citing Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div. 1994)) (rejecting review of the trial court's denial of a request for special interrogatories because the issue was not listed in the notice of appeal). "[I]f the notice [of appeal] designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Ibid. (citing W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458-59 (App. Div. 2008)). For these reasons, we do not review the September 15, 2017 order granting defendant summary judgment because plaintiff's notice of appeal does not indicate he has appealed from the order.

II.

Motions for reconsideration are left to the discretion of the trial judge. Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div. 2002); Marinelli v.

Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997). "[W]here there is a denial of a motion for reconsideration, the standard . . . is 'abuse of discretion.'" Marinelli, 303 N.J. at 77 (quoting Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)).

On appeal, plaintiff argues the motion judge should have granted reconsideration and vacated summary judgment because a jury could conclude defendant retaliated against him for being absent from work on medical leave and defendant's reason for suspending him was discriminatory. Plaintiff argues summary judgment was improper because a jury could conclude plaintiff was discriminated against on the basis of a perceived disability. Plaintiff also argues his claims supported submission of the issue of punitive damages to a jury. We address these arguments in turn.

Pursuant to N.J.S.A. 10:5-12(d), it is unlawful under the LAD "[f]or any person to take reprisals against any person . . . in the exercise or enjoyment of . . . any right granted or protected by this act."

> [T]he prima facie elements of a retaliation claim under the LAD requires plaintiff to demonstrate that: (1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence.

[Victor v. State, 203 N.J. 383, 409 (2010).]

As we noted, the motion judge determined plaintiff had not demonstrated a causal link between availing himself of workers' compensation and his suspension from employment for several reasons in granting summary judgment. Indeed, contrary to plaintiff's claims, there was no evidence the drug test was not random, the drug testing facility contacted plaintiff to provide his prescription medications before contacting defendant and before disciplinary charges were filed, and plaintiff agreed to his suspension as a result of the drug test. Furthermore, all employees were excluded from the supply warehouse; plaintiff was not singled out. There was also no evidence that requiring plaintiff to do road work as opposed to working only in the yard was a form of menial work. On reconsideration, the motion judge did not abuse his discretion when he determined there was no causal link between plaintiff taking leave and the disciplinary action he received for testing positive for amphetamines.

The LAD states it shall be an unlawful employment practice, or unlawful discrimination "for an employer, because of the . . . disability . . . of any individual . . . to discharge . . . or to discriminate against such individual . . . in terms, conditions or privileges of employment[.]" N.J.S.A. 10:5-12(a). Discrimination due to disability may be proved by either direct or circumstantial

evidence.  A.D.P. v. ExxonMobil Research & Eng'g Co., 428 N.J. Super. 518, 531 (App. Div. 2012).

> The elements of a prima facie case of discriminatory harassment, transfer, or discharge are that (1) the complainant was handicapped within the meaning of the law; (2) the complainant had been performing his or her work at a level that met the employer's legitimate expectations; (3) the complainant nevertheless had been required to labor under conditions that were unreasonably different from those of other employees, had been transferred, or had been fired; and (in the case of discriminatory transfer or discharge) (4) the employer had sought another to perform the same work after complainant had been removed from the position.
>
> [Maher v. N.J. Transit Rail Operations, 125 N.J. 455, 480-81 (1991).]

Additionally, it is unlawful to discriminate based on perceived disability. Andersen v. Exxon Co., 89 N.J. 483, 496 (1982).  However, "an employer who rejects a job applicant not because of his handicap per se but because of an opinion, reasonably arrived at, that the handicap precludes adequate job performance, . . . cannot and should not be found in violation of the [LAD.]" Ibid. (citing Panettieri v. C.V. Hill Refrigeration, 159 N.J. Super. 472, 487 (1978)).

Indeed, in Vargo v. Nat'l Exch. Carriers Ass'n, Inc., 376 N.J. Super. 364, 381-83 (App. Div. 2005), we affirmed the summary judgment dismissal of a

plaintiff's discrimination complaint where a drug test administered on behalf of the plaintiff's employer returned positive for morphine. In Vargo, the plaintiff's drug test was also positive for psychotropic medication. Id. at 374. The plaintiff previously informed his employer he had been medically prescribed Zoloft and Lotrel. Id. at 372. However, he was terminated and subsequently filed suit alleging, in part, the employer "wrongfully refused to hire him as a permanent employee . . . and wrongfully discharged him from his temporary position . . . in violation of the NJLAD because [the employer's] decisions were based on its perception that he was suffering from a disability." Id. at 378. We affirmed summary judgment in the employer's favor and held "where an employer was presented with a positive drug test result for a prospective employee, there was nothing improper or unlawful in the employer's perceiving the prospective employee as a user of illegal drugs." Id. at 383.

Here, there is no evidence plaintiff was actually disabled. He returned to work following his leave on a full-time basis and without restriction. Notwithstanding the lack of proof of an actual disability, and assuming plaintiff had a disability, he testified as follows in his deposition:

> Q. Do you believe that the County took you out of the yard and put you on the road because of the disability that you just described for me, which was the [discs,]

the tear in your rotator cuff, and your post-traumatic stress disorder?

A. No ma'am.

Additionally, plaintiff testified:

Q. Do you believe that your disability had any reason or had any factor in you being suspended as a result of the positive drug test?

A. No ma'am.

Therefore, the motion judge did not abuse his discretion when he denied plaintiff's motion for reconsideration where plaintiff failed to establish he was disabled or that he was required "to labor under conditions that were unreasonably different from those of other employees[.]" Maher, 125 N.J. at 480-81.

For these same reasons, the motion judge did not abuse his discretion when he denied plaintiff's motion for reconsideration on account of perceived disability discrimination. Moreover, as we noted, pursuant to Vargo, defendant's suspension of plaintiff as a result of the positive drug screen was not discriminatory.

Finally,

[p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the

13

A-1482-17T3

defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

[N.J.S.A. 2A:15-5.12(a).]

The motion judge did not abuse his discretion to deny plaintiff reconsideration due to the lack of evidence demonstrating prima facie discrimination under the LAD. Consequently, the record lacks clear and convincing evidence that defendant harmed plaintiff to warrant consideration of a punitive damages claim by a jury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1482-17T3