**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0383-18T4

CARMEN MARSILLO and
IDA MARSILLO,

    Plaintiffs-Appellants,

v.

VICTOR G. GENTILE, M.D.,

    Defendant-Respondent.

_____

Argued January 7, 2020 – Decided January 28, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0674-15.

William L. Gold argued the cause for appellants (Bendit Weinstock, PA, attorneys; William L. Gold and Eryn M. Fernandez-Ledon, on the briefs).

Mark Alan Petraske argued the cause for respondent (Dughi Hewit Domalewski PC, attorneys; Mark Alan Petraske and Sheila Murugan, on the brief).

PER CURIAM

Following a jury verdict of no cause of action in this medical malpractice matter, plaintiff Carmen Marsillo[1] appeals the denial of his motions for partial summary judgment on liability and a directed verdict on deviation from the accepted medical standard, and the final order entering judgment for defendant Victor G. Gentile, M.D. Plaintiff claimed he suffered permanent injuries, including hearing loss, headaches, and loss of balance as a result of defendant's failure to diagnose a benign tumor known as an acoustic neuroma. Because genuine issues of material fact precluded judgment as a matter of law, we affirm the denial of plaintiff's motions[2]; because plaintiff failed to move for a new trial before the Law Division, we decline to consider plaintiff's argument that the verdict was against the weight of the evidence.

---

[1] All references to plaintiff in our opinion are to Carmen Marsillo. The per quod claim of his wife, Ida, was wholly derivative.

[2] The motion judge entered an order denying summary judgment; the trial judge issued an oral decision denying a directed verdict, but he did not enter an accompanying order. That trial judge's decision is referenced in plaintiff's case information statement but not in his notice of appeal, contrary to the requirements set forth in Rule 2:5-1(e)(3)(i). We could reject plaintiff's argument on that basis, see Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.) (holding issue raised in brief but not designated in notice of appeal was not properly before court), aff'd o.b., 138 N.J. 41 (1994), but we choose to consider the issue because of its similarity to plaintiff's summary judgment issue. And, plaintiff's counsel candidly admitted at oral argument before us that plaintiff's primary contention on appeal is the denial of his summary judgment motion.

We review a court's denial of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Similarly, we review a trial court's decision on a motion for judgment, or directed verdict, pursuant to Rule 4:40-1, applying the same standard of review as the trial court. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). Both motions require us to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995); R. 4:46-2(c); see also R. 4:40-1. The distinction between the two motions "is that summary judgment motions are generally decided on documentary-evidential materials, while the directed verdicts are based on evidence presented during a trial." Brill, 142 N.J. at 536.

We first consider the facts from the record before the motion judge in a light most favorable to the non-moving defendant. Id. at 523. Following the onset of headaches and hearing loss, plaintiff sought treatment from his primary care physician, who ordered two MRIs and referred plaintiff to defendant – a board-certified otolaryngologist, commonly known as an ear, nose, and throat (ENT) doctor. Plaintiff consulted with defendant on one occasion. The parties' deposition testimony diverged sharply with regard to that appointment.

3

Plaintiff claimed he brought both MRI films and the accompanying reports to the appointment; defendant – who was not trained to read MRIs – countered plaintiff only furnished defendant with an MRI film of his internal auditory canal, without the accompanying radiologist's report. Defendant "did not see anything abnormal" on the MRI films plaintiff provided, and denied plaintiff told him "he was there because there was a suspected acoustic neuroma[.]" Defendant was not "looking for an acoustic neuroma . . . at that visit." Instead, he considered underlying neurological, vascular, or viral causes for plaintiff's symptoms. Accordingly, defendant recommended treatment with Valtrex and steroids; a hearing test; and vascular studies if plaintiff's condition did not improve. Plaintiff denied defendant advised him to return to his office for a follow-up appointment.

Instead, within four months, plaintiff returned to his primary care physician, complaining his symptoms had worsened. Plaintiff was referred to another otolaryngologist, who diagnosed plaintiff with an acoustic neuroma. Twenty-seven months after plaintiff's consultation with defendant, another doctor removed the acoustic neuroma via radiosurgery.

Plaintiff's expert, John Biedlingmaier, M.D., acknowledged the parties disputed whether plaintiff gave defendant both MRIs and the accompanying

4

reports during his appointment with defendant. Relevant here, Dr. Biedlingmaier postulated, "[i]f [plaintiff], in fact, brought both sets of MRI's [sic], together with the reports, then clearly [defendant] deviated from accepted standards of practice because both reports indicated that he had an acoustic neuroma." (Emphasis added). According to the expert, if defendant "was incapable of reading the MRI" he should have "contact[ed] the radiologist for the radiologist's opinion" or referred plaintiff to a doctor who was able to read the MRI. Dr. Biedlingmaier concluded "[w]ithin a reasonable degree of medical probability" defendant's failure "to diagnose and recommend proper treatment for [plaintiff]'s acoustic neuroma increased the risk that he would develop the permanent sequela that he has and was a substantial factor in his permanent loss of hearing, loss of balance and headaches."

Defendant's expert, Kenneth A. Remsen, M.D., rendered a competing opinion. Recognizing plaintiff was seen by defendant "only once" and "did not follow up with him as advised in the upcoming [three to four] weeks" for an audiogram, Dr. Remsen opined defendant did not deviate from the standard of care applicable to otolaryngologists, and did not cause plaintiff's condition to worsen. In his opinion, had that follow-up occurred, "the work-up could have been further pursued and the diagnosis . . . made in a more timely fashion." Dr.

5

Remsen agreed that, if defendant could not read the MRI, the standard of care required him to contact the radiologist to determine what the images depicted. But the expert added, the standard of care did not require defendant to "necessarily" contact the radiologist at that point, but "[p]erhaps about the time of the next office visit." Dr. Remsen further acknowledged the standard of care required defendant to refer plaintiff to a neurotologist or neurosurgeon if he were not going to treat the acoustic neuroma himself. The expert noted, however, defendant "never saw the patient again."

Following the close of discovery, plaintiff moved for partial summary judgment, claiming both experts agreed "defendant deviated from the standard of care in a number of ways." Plaintiff also argued Dr. Remsen's opinion was "net" because he opined when a patient presents with dizziness and hearing loss, "it's instinctual" or "ENT 101" to consider an acoustic neuroma based on those symptoms.

The motion judge denied plaintiff's partial summary judgment application in a terse oral opinion, ultimately concluding the deviation issue should be determined "upon the full body of the testimony." The judge declined to consider plaintiff's net opinion motion, deferring resolution of that issue to the trial judge.

6

The matter proceeded to trial before another judge and a jury. We consider the trial testimony in a light most favorable to defendant. Frugis, 177 N.J. at 269. Dr. Remsen's trial testimony was largely consistent with his deposition testimony. Dr. Remsen testified defendant did not inform plaintiff he needed to obtain the MRI report, which was the standard of care, but defendant "never saw the patient again." Dr. Remsen also testified defendant would have deviated from the standard of care had he not attempted to obtain the radiologist report upon the patient's return for a follow-up appointment. But, plaintiff never returned for a follow-up appointment.

At the close of the evidence, plaintiff moved for a directed verdict on defendant's liability, renewing his claim that Dr. Remsen repeatedly testified defendant deviated from the standard of care and therefore there was no genuine issue of material fact for the jury. The trial judge denied the motion, finding there was a "sufficient dispute of the facts" for the issue to be determined by the jury.

On appeal,[3] plaintiff raises the following points for our consideration:

_____

[3] In his reply brief, plaintiff raises a sub-argument to point I, contending "The Motion Court Abused Its Discretion on Factual Determinations." An issue that is not addressed in a party's initial merits brief is deemed to be waived. See Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011). We therefore decline to consider that argument.

I. PARTIAL SUMMARY JUDGMENT WAS IMPROPERLY DENIED BECAUSE THERE WAS NO DISPUTE AS TO ANY MATERIAL FACT ON LIABILITY.

II. PLAINTIFFS' MOTION FOR A DIRECTED VERDICT WAS IMPROPERLY DENIED AT TRIAL.

III. THE JURY'S VERDICT THAT [DEFENDANT] DID NOT DEVIATE FROM THE ACCEPTED STANDARD OF CARE WAS AGAINST THE WEIGHT OF THE EVIDENCE.
[(Not raised below)]

In determining whether defendant was entitled to judgment as a matter of law, we first consider the elements of the claim plaintiff was required to prove. See Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996). Generally, "[t]o establish a prima facie case of negligence in a medical-malpractice action, a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." Gardner v. Pawliw, 150 N.J. 359, 375 (1997) (internal citations omitted).

We agree with both judges that there was a jury question as to whether defendant deviated from the accepted medical standard of care for otolaryngologists. Plaintiff's argument that both experts agreed defendant

deviated from that standard ignores much of the motion record and the trial testimony that suggest otherwise.

Notably, the parties disputed whether: plaintiff brought the MRI report – which specifically stated plaintiff's scans were suspicious for acoustic neuroma – to his only appointment with defendant; plaintiff informed defendant his primary care physician suspected he had a tumor; and defendant recommended that plaintiff return for a follow-up visit. Even Dr. Biedlingmaier acknowledged the parties' disagreement about whether defendant was furnished with the MRI reports at the time of his consultation with plaintiff. When viewing those facts in a light most favorable to defendant – who stated plaintiff only brought the MRI to the appointment – reasonable minds could reach different conclusions on whether defendant deviated from the standard of care.

To support his summary judgment point, plaintiff cherry-picks portions of Dr. Remsen's deposition testimony based on hypothetical questions that assumed disputed facts. For example, during Dr. Remsen's deposition, plaintiff's counsel told the expert to assume "[t]he patient tells you that the internist [told him] . . . to see an ENT because there may be some tumor in his ear, and he's got partial hearing loss." In response, Dr. Remsen indicated he would have told the patient he is "not an expert in reading MRIs" and that he

9

would need a "formal reading hopefully by a neuroradiologist." Dr. Remsen conceded defendant did not comply with that standard of care under those assumed facts. Because the parties disputed whether plaintiff informed defendant his primary care physician suspected plaintiff had a tumor – and viewing those underlying facts in a light most favorable to defendant – we conclude the motion judge properly determined genuine issues of fact precluded summary judgement as to whether defendant deviated from the standard of care.

Turning to plaintiff's second point, plaintiff again relies upon isolated excerpts of Dr. Remsen's testimony to support his argument that the experts agreed defendant deviated from the standard of care. In doing so, plaintiff ignores Dr. Remsen's trial testimony to the contrary, and fails to support his claim that the expert back-tracked from that opinion. On direct examination the following testimony was adduced:

> PLAINTIFF'S COUNSEL: Okay. Based on a review of the medical records, did [defendant] have an idea of what might be going on with this particular patient or have a pathway to follow?
>
> DR. REMSEN: Yes.
> PLAINTIFF'S COUNSEL: Did he reach a diagnosis?
>
> DR. REMSEN: No.

PLAINTIFF'S COUNSEL: Does it violate [the] standard of care to not have a diagnosis on that first visit of the acoustic neuroma?

DR. REMSEN: No.

PLAINTIFF'S COUNSEL: Why not?

DR. REMSEN: Because the diagnosis of this type of situation requires further testing, and it's a process. [Defendant] did not see the acoustic neuroma, as I did not when reviewing the films, and patients come in with the dizziness, as I mentioned when I discussed the differential diagnosis, it could be many different things. So it is not a deviation of [the] standard of care to not make the diagnosis. The situation is such that you have a dizzy patient, you're not sure what's causing it at that particular time, and it requires further evaluation and follow-up, which did not happen.

And, on redirect examination Dr. Remsen reiterated his opinion that defendant did not deviate from the standard of care:

PLAINTIFF'S COUNSEL: . . . if you assume the patient did not walk in and say I have a tumor, is virus a reasonable option and a reasonable thing to discuss with the patient?

DR. REMSEN: Yes, that would then be at the top of my list.

PLAINTIFF'S COUNSEL: . . . Did [defendant] stop there with his evaluation and say you've got a virus, go away?

DR. REMSEN: No.

11

PLAINTIFF'S COUNSEL: He had a plan to continue looking, working him up, right?

DR. REMSEN: Yes, he did.

Importantly, plaintiff fails to offer any proof that Dr. Remsen "completely abandoned his original opinions concerning [the] deviation from the . . . accepted standard of care." Ritondo by Ritondo v. Pekala, 275 N.J. Super. 109, 116 (App. Div. 1994) (holding a medical expert's complete "negation of his direct testimony was a clear and unequivocal withdrawal of his opinion"). Considering the entirety of Dr. Remsen's testimony, rather than isolated excerpts favorable to plaintiff, we conclude the trial court properly denied plaintiff's motion for a directed verdict.

To the extent not addressed, plaintiff's remaining arguments in points I and II lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Little needs to be said regarding plaintiff's newly-minted claim in point III that the verdict was against the weight of the evidence. Because plaintiff failed to move for a new trial on that basis, the issue is not cognizable on appeal. R. 2:10-1 (providing, in pertinent part, "the issue of whether a jury verdict was against the weight of evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court"); see also Ogborne v.

Mercer Cemetery Corp., 197 N.J. 448, 462 (2009). The Rule is strictly enforced, particularly in civil cases such as this, where there are no constitutional rights at stake. See Fiore v. Riverview Med. Ctr., 311 N.J. Super. 361, 363 n.1 (App. Div. 1998). Nor do we perceive any interest of justice warranting a relaxation of the Rule in this case. See R. 1:1-2(a) (recognizing "any rule may be relaxed or dispensed with by the court . . . if adherence to it would result in an injustice").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION