**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4070-18

MATTHEW DAVIS,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued May 4, 2021 – Decided May 20, 2021

Before Judges Yannotti and Mawla.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-53659.

Stuart J. Alterman argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel; Arthur J. Murray, on the briefs).

Juliana C. DeAngelis, Deputy Attorney General, argued the cause for respondent (Robert S. Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; Melissa

H. Raksa, Assistant Attorney General, of counsel; Juliana C. DeAngelis, on the brief).

PER CURIAM

Matthew Davis appeals from a final decision of the Board of Trustees (Board), Police & Firemen's Retirement System (PFRS), which found that he is not entitled to accidental disability retirement benefits pursuant to N.J.S.A. 43:16A-7. We affirm.

I.

In October 1999, Davis began working as a firefighter and emergency medical technician (EMT) in the Township of Westhampton. In December 2005, while skiing, Davis injured his right knee. He was diagnosed with a torn anterior cruciate ligament (ACL), and thereafter he had patellar tendon autograft ACL reconstructive surgery.

During that procedure, the doctor removed a third of Davis's right kneecap and grafted it to the injured ACL. Thereafter, Davis had physical therapy. In July 2006, Davis completed a functional capacity evaluation, and he was cleared to return to work without any restrictions. Davis returned to work. He also took on additional responsibilities, including membership in the Burlington County Response and the New Jersey Urban Search and Rescue teams.

On March 7, 2015, at approximately 2:00 a.m., Davis and other firefighters were dispatched to a fire in Willingboro. At the time, it was extremely cold, and the ground was covered with snow and ice. The firefighters needed water to fight the fire. Davis grabbed a wrench and ran to the hydrant to turn on the water. As Davis was running, he slipped and fell on the ice, landing on his right knee and hand. He attempted to get back on his feet but fell and again landed on his right knee.

Davis drove himself to a hospital in Mount Holly for treatment. At the hospital, an X-ray was taken. It was negative for fractures but showed changes due to the previous ACL repair, as well as certain degenerative changes. Davis was referred to an orthopedic surgeon, who prescribed cortisone injections and physical therapy. Davis continued to have pain and swelling of the right knee.

In May 2015, Davis had arthroscopic surgery on his right knee. The surgeon informed Davis that, during the procedure, he cleaned up scar tissue from the 2006 ACL surgery. After the surgery, Davis continued going to physical therapy and received additional cortisone injections. In October 2015, Davis was found to have achieved maximum medical improvement (MMI). He was given a medical release.

A-4070-18

Thereafter, Davis had two fitness-for-duty evaluations. The results of the evaluations were consistent with the MMI determination. Davis was cleared to return to work with restrictions on lifting and climbing ladders with weights. Although the fire department offers light duty, Davis was informed he could not return to work as a fireman.

On February 19, 2016, Dr. Evamaria Eskin of Virtua Hospital wrote a letter stating, "Davis is not capable of safely performing work requiring more than very limited squatting, kneeling or crawling. Therefore, he is unable to safely perform the . . . essential functions of a [f]irefighter or the job demands required of an EMT." Davis never returned to work.

In December 2015, Davis submitted an application for accidental disability retirement pursuant to N.J.S.A. 43:16A-7. He claimed that he was permanently disabled as a result of the 2015 accident. In February 2017, the Board denied the application. The Board found that Davis's disability was due to a pre-existing disease alone or a pre-existing disease that was aggravated or accelerated by the work effort.

Davis filed an administrative appeal, and the Board referred the matter to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). At the hearing, Davis presented testimony from Arthur Becan,

M.D. and Jeffrey F. Lakin, M.D. testified for the Board. Both witnesses are orthopedic surgeons, and they both performed physical examinations of Davis. Dr. Lakin is board-certified; Dr. Becan is not.

Dr. Becan testified that due to his ACL reconstruction surgery, Davis "did not have [a] 100 percent normal knee before the [March 2015] injury." He stated that Davis's total and permanent injury to his right knee was directly and causally related to the March 2015 incident, as the incident was the "sole producing factor" for his inability to work.

Dr. Becan also opined that Davis's skiing accident and resulting surgery played no role in his total and permanent disability. He stated that if Davis's skiing injury contributed to the March 7, 2015 injury, he would have expected some physical manifestation in Davis's right knee after he returned to work following the skiing injury.

Dr. Becan further testified that ACL reconstructive surgeries typically have excellent results. He said ACL reconstructive surgery does not weaken the knee, but an individual who undergoes the surgery "may develop some arthritis of that knee . . . 10's or 20's or 30 years later." He noted that Davis had mild arthritis in his knee as of 2015, and arthritis can cause swelling, loss of motion, and knee pain. Dr. Becan also stated that an ACL surgery could "increase [the]

5

probability of" an individual suffering a "more extensive [subsequent] injury" by "five or ten percent."

Dr. Lakin testified that Davis's X-rays showed degenerative changes after the March 2015 incident. He stated that Davis's ACL reconstruction surgery "caused the arthritis[, and] was clearly the contributing factor to his disability and [the March 2015] accident was just a minor aggravation . . . ."

Dr. Lakin testified that Davis's skiing accident and surgery predisposed him to arthritis. He cited a study by the American Academy of Orthopedic Surgery (AAOS), which revealed that patients who receive ACL reconstructive surgery have an increasingly significant chance of developing arthritis over time.

Dr. Lakin concluded that Davis is totally and permanently disabled from performing the duties of a firefighter and EMT. He opined that Davis's disability was the result of pre-existing arthritis caused by the ACL reconstructive surgery.

On November 30, 2018, the ALJ issued an initial decision. The ALJ rejected Davis's contention that Dr. Lakin's reports constitute net opinions. The ALJ found that Dr. Lakin had properly supported his opinions by citations to his training and experience, his examination of Davis, and his review of Davis's medical history. The ALJ determined that Dr. Lakin's opinion "provided a 'why'

and 'wherefore' of Davis's injuries and causation for his permanent disability." The ALJ therefore found that Dr. Lakin's opinion was admissible.

The ALJ also found that both Dr. Becan and Dr. Lakin were "competent, well qualified, [and] professional," but "Dr. Becan's testimony was the more persuasive and entitled to greater weight." The ALJ stated that Dr. Becan "convincingly opined" that Davis would not have been physically incapacitated from his normal work responsibilities but for the incident in March 2015.

The ALJ determined that the issue presented was "whether the traumatic event was the substantial factor in causing [Davis's] permanent disability." The ALJ found that Davis was eligible for accidental disability retirement benefits. The ALJ determined that "the work effort alone, or in combination with his degenerative disease, did not cause Davis's disability. Rather, [the] unexpected fall [in March 2015] was the substantial cause of [Davis's] permanent disability."

The Attorney General filed exceptions to the ALJ's initial decision, and Davis filed a response to the exceptions. The Board issued a letter dated January 16, 2019, indicating that at its meeting of January 14, 2019, it voted to reject the ALJ's initial decision. The Board determined that Davis was not entitled to accidental disability retirement benefits, but he will receive an ordinary

7

disability retirement. The Board stated that it would later issue findings of fact and conclusions of law.

By letter dated January 29, 2019, the Board provided its final decision on Davis's application. The Board found that "Davis had an underlying condition that was traumatically induced by a 2005 skiing accident." The Board noted that Davis admitted he had a "stability issue with [his right] knee" after the 2005 incident. The Board found, based on Dr. Lakin's testimony, that Davis had a compromised knee because the injury to his right knee in 2005 and subsequent surgery in 2006, "dramatically increased his chances of suffering from symptomatic arthritis (independent of the 2015 incident)."

The Board concluded that Davis was not entitled to accidental disability retirement benefits because his underlying condition, long-standing pre-existing arthritis, had "aggravated or ignited" the pain he experienced from the March 2015 accident. The Board noted that Davis had forty-five days in which to appeal its final decision to this court.

On February 28, 2019, Davis filed with the Board an application for reconsideration. The Board issued a letter dated April 9, 2019, informing Davis that it had denied his request for reconsideration, noting that he had not submitted "any new information."

8

The Board stated that in its January 29, 2019 letter, Davis was informed he had a right to appeal to this court "within 45 days of the date of that letter." The Board stated that Davis's appeal to the Board has been exhausted, and any appeal would be to this court.

On May 22, 2019, Davis filed a notice of appeal (NOA) in which he stated he was appealing the Board's decision denying his request for reconsideration dated April 9, 2019. On June 4, 2019, Davis filed an amended NOA. Davis corrected the case caption and under "additional" information, noted that the ALJ had issued the initial decision on November 30, 2018, and the Board had issued its decision on January 16, 2019, and a final decision on January 29, 2019.

II.

The Board argues that this appeal must be limited to its April 2019 decision denying reconsideration. The Board contends we should disregard all of Davis's arguments pertaining to the Board's January 29, 2019 decision. We disagree.

The NOA must "designate the judgment, decision, action or rule, or part thereof appealed from . . . ." R. 2:5-1(e)(1) to (e)(3)(i). Although Rule 2:5-1(e)(1) does not so provide, "it is clear that it is only the judgments or orders or parts thereof designated in the [NOA] which are subject to the appeal process

9                                                                A-4070-18

and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1(e)(1) (2021). See Fusco v. Newark Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002); Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41 (1994). "Consequently, if the notice designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Pressler & Verniero, cmt. 5.1 on R. 2:5-1(e)(1).

As noted, on May 22, 2019, Davis filed his NOA and case information statement (CIS). The court's records indicate that on May 31, 2019, a representative from the Clerk's Office informed Davis's counsel that "as it appears now, you are only appealing the April 09, 2019 decision listed on the [NOA]. . . . [I]f you are also appealing the November 30, 2018, January 16, 2019 and January 29, 2019 decisions, as indicated on the [CIS], you must submit an Amended [NOA] adding those decisions."

On June 4, 2019, Davis's counsel filed an amended NOA, which stated that he was appealing the Board's April 9, 2019 decision. In the section pertaining to "additional" information, Davis noted that the ALJ had issued the initial decision on November 30, 2018, and the Board had issued its decision on January 16, 2019, and a final decision on January 29, 2019. We are convinced

10

that in his amended NOA, Davis sufficiently identified the Board's final decision of January 29, 2019, as one of the decisions he was appealing.

The Board argues, however, that our decision in Fusco requires that we limit our review to the Board's April 9, 2019 decision on reconsideration. In Fusco, the plaintiff filed a NOA of an order denying his motion for reconsideration of an order entered in favor of granting summary judgment to the Board of Education of the City of Newark. 349 N.J. Super. at 459-60. In his appellate brief, the plaintiff raised five issues that related to the order granting summary judgment in favor of the defendant. Id. at 460.

The defendant argued that we should limit our review to the order denying reconsideration. Ibid. We agreed with the defendant. Id. at 460-61. We noted that the plaintiff did not state in the NOA or the CIS that he was appealing from the order granting summary judgment. Id. at 460. We also noted that in its CIS, the defendant stated that the order denying reconsideration formed the "sole basis" for the appeal. Ibid. Even so, the plaintiff "never sought to clarify or amend his [NOA]." Id. at 460-61.

The Board's reliance upon Fusco is misplaced. As noted, in that matter, the appellant never stated he was appealing from the trial court's order granting summary judgment in favor of the defendant, and the appellant never sought to

"clarify or amend" the NOA. In this case, Davis clarified and amended his NOA, and identified the Board's final decision of January 29, 2019, as one of the decisions he was appealing.

The Board also relies upon our decision in W.H. Industries, Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455 (App. Div. 2008). In that case, the trial court entered an order dismissing the complaint and later filed an order denying the plaintiff's motion for reconsideration. Id. at 458. The plaintiff's NOA stated that it was appealing the order denying the motion for reconsideration. Ibid.

We noted that only orders designated in the NOA "are subject to the appeal process and review." Ibid. (citing Sikes, 269 N.J. Super. at 465-66). We decided, however, to address the propriety of the prior order, even though we were not required to do so. Id. at 459.

The Board's reliance on Fundicao also is misplaced. In that case, the appellant did not amend the NOA to clarify that it was appealing from the order granting summary judgment to the defendant. Here, Davis has amended his NOA and indicated he is appealing from the Board's final decision of January 29, 2019.

A-4070-18

Furthermore, in <u>Fundicao</u>, we exercised our discretion and decided the issues raised concerning the summary judgment order. Therefore, <u>Fundicao</u> does not require us to limit our review to the Board's April 9, 2019 decision on Davis's request for reconsideration.

III.

The Board further argues that we should not consider Davis's arguments regarding the Board's January 29, 2019 decision because Davis did not file a timely appeal from that decision. The Board notes that a NOA from a final decision or action of a State administrative agency must be filed "within 45 days from the date of service of the decision or notice of the action taken." <u>R.</u> 2:4-1(b).

The Board notes that the time for appeal is tolled by the filing of a timely application for reconsideration. <u>R.</u> 2:4-3(b). The Board asserts that because Davis filed his request for reconsideration on February 28, 2019, he only had an additional fourteen days in which to file a NOA after the Board issued its April 9, 2019 decision. The Board therefore argues that Davis had until April 23, 2019 in which to appeal the January 29, 2019 decision. As noted, Davis filed his NOA on May 22, 2019.

13

However, the time for appeal may be extended for thirty days on a showing of good cause.  R. 2:4-4(a).  We are convinced there is good cause to extend the time for appeal, nunc pro tunc.  As we have explained, Davis filed his NOA within the thirty-day extension period, and in his amended NOA, he indicated that he is appealing from the Board's January 29, 2019 decision.

IV.

The Board further argues that we should limit our consideration of the appeal to the items identified in the statement of items comprising the record on appeal (SICR).  In the SICR, the Board only identified the NOA filed on May 22, 2019, the Board's April 9, 2019 letter, and Davis's motion for reconsideration with attachments.  The Board did not include the evidence of the records pertaining to the ALJ's initial decision and the Board's decision of January 29, 2019.

Rule 2:5-4(a) provides that "[t]he record on appeal shall consist of all papers on file in the court or courts or agencies below, . . . the stenographic transcript or statement of the proceedings therein, and all papers filed with or entries made on the records" of this court.  Davis's appendix includes records filed with the ALJ and the Board with regard to his application, the ALJ's initial decision, and the Board's final decisions of January 29, 2019, and April 9, 2019.

The Board has not identified any records in the appendix that were not submitted to the ALJ or the agency. Therefore, we reject the Board's contention that we should limit our review to the items identified in the SICR.

V.

Davis argues that the Board erred in denying his application for accidental disability retirement benefits and in denying his application for reconsideration. We disagree.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). Our review of an agency's decision is limited to considering:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

15

[In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

We are required to affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence." In re Taylor, 158 N.J. 644, 656-57 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Moreover, "[i]f [we are] satisfied after [our] review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then [we] must affirm even if [we] feel[] that [we] would have reached a different result . . . ." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988).

The PFRS provides for accidental disability retirement benefits. N.J.S.A. 43:15A-43. To qualify for such benefits, a member of the PFRS must show that he or she "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." Ibid.

In Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), the Court noted that to obtain accidental disability benefits, the PFRS member must show:

> 1.  that he [or she] is permanently and totally disabled;
>
> 2.  as a direct result of a traumatic event that is

16

a.     identifiable as to time and place,

b.     undesigned and unexpected, and

c.     caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3.     that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4.     that the disability was not the result of the member's willful negligence; an[d]

5.     that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Ibid.]

Here, the Board did not dispute that Davis met all of the Richardson criteria for eligibility, except for the requirement that he show his disability was "not the result of pre-existing disease that is aggravated or accelerated by the work . . . ."  192 N.J. at 213.  The Board determined that Davis's disability did not meet this requirement.

The Board noted that Davis had an underlying condition that was "traumatically induced" by his skiing accident in 2005, which compromised his knee and created a "stability issue."  The Board stated that Dr. Lakin had "reliably explained" that the 2005 injury was followed by intense pain and ACL

17

reconstructive surgery, which predisposed Davis to arthritis. Dr. Lakin had testified that the ACL surgery left Davis with "less of a cushion in the knee" and, as a result, "the knee is never the same."

The Board further stated that the 2005 injury and the 2006 surgery increased the chances that Davis would suffer from symptomatic arthritis in the future, wholly aside from the minor aggravating 2015 incident. The Board stated:

> Dr. Lakin relied on a study by the [AAOS] which showed that a year after ACL reconstructive surgery "30% [of patients] will have some arthritis," after "10 years you will see 50% arthritic changes" and after "20 years well over 60% of the patients have arthritis in the knee." Perhaps the most relevant aspect of the study was the finding that an individual who undergoes a patella tendon autograft will experience an increased risk of anterior knee pain, kneeling pain, and arthritis – which are exactly the symptoms Davis suffered after the 2015 incident.

The Board stated that, under Gerba v. Board of Trustees, Public Employees' Retirement System, 83 N.J. 174, 186 (1980), an individual does not qualify for accidental disability benefits if the disability is caused by an underlying condition, which has not been directly caused, but is only aggravated or ignited by the traumatic event. The Board concluded that the evidence showed that the 2015 incident merely aggravated or ignited Davis's long-

standing pre-existing arthritis. Therefore, he is not entitled to accidental disability retirement benefits. There is sufficient credible evidence in the record to support the Board's findings.

Davis argues, however, that the Board erred by relying on Dr. Lakin's testimony. He contends that Dr. Lakin's analysis constituted an inadmissible net opinion. He asserts that Dr. Lakin failed to provide the methodology in arriving at his opinion on the cause of his disability and failed to give the "why" and the "wherefore" of his conclusion.

N.J.R.E. 703 "addresses the bases of opinion testimony by experts." State v. Townsend, 186 N.J. 473, 494 (2006) (internal quotation marks and citation omitted). The Rule permits expert opinion based on:

> facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.
>
> [Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008) (quoting Townsend, 186 N.J. at 494)].

"The corollary of [Rule 703] is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. (quoting Townsend, 186 N.J. at 494)

A-4070-18

(alteration in original); see Creanga v. Jardal, 185 N.J. 345, 360 (2005) ("[a]n expert's conclusion is considered to be a 'net opinion,' and thereby inadmissible, when it is a bare conclusion unsupported by factual evidence"). "[T]he net opinion rule 'requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion.'" Townsend, 186 N.J. at 494 (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002)).

Here, the ALJ had found that Dr. Lakin did not provide a net opinion because he personally examined Davis and reviewed his medical history, including Davis's surgical and physical therapy reports. The ALJ stated the documentation that Dr. Lakin relied on is "reasonably relied upon by experts in his field and were also notably relied upon by Dr. Becan in reaching his opinion."

The ALJ determined that in formulating his opinion, Dr. Lakin cited to his training and experience, his evaluation of Davis and review of his medical history, all of which provided the "why" and "wherefore" of Davis's injuries and causation for his permanent disability. The Board also found that Dr. Lakin reliably explained his conclusion as to Davis's injury.

The record shows that Dr. Lakin's reports and analysis were not net opinions. He did not provide "bare conclusions." He supported his opinions

with reference to specific facts, which he obtained by reviewing Davis's medical records and conducting a physical examination. He also relied upon an authoritative medical text. We reject Davis's contention that Dr. Lakin was required to provide the Board with a thorough analysis of the injuries Davis sustained in the 2005 and 2015 accidents.

Davis further argues that the Board erred by accepting Dr. Lakin's testimony. He contends the Board should have accepted the ALJ's finding that Dr. Becan's testimony was more persuasive than Dr. Lakin's testimony. Again, we disagree.

In her initial decision, the ALJ found that Dr. Becan had "convincingly opined" that Davis would not have been physically incapacitated from his normal work responsibilities but for the March 2015 accident. Although the Board did not explicitly state that Dr. Lakin was more credible than Dr. Becan, that conclusion is readily apparent from the Board's final decision.

An ALJ is required to issue an initial decision with recommended findings of fact and conclusions of law that are "based upon sufficient, competent, and credible evidence." ZRB, LLC v. N.J. Dep't of Env't Prot., 403 N.J. Super. 531, 561 (App. Div. 2008) (quoting N.J.S.A. 52:14B-10(c)). In its review of the

21

ALJ's decision, an agency need not defer to the ALJ on its determinations of the credibility of expert witnesses. Ibid.

An agency's decision to accept or reject an expert's testimony is conclusive on appeal so long as that decision is reasonably made. Oceanside Charter Sch. v. N.J. State Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011) (citing In re Application of Howard Sav. Bank, 143 N.J. Super. 1, 9 (App. Div. 1976)). Here, the Board reasonably determined, from its review of the record, that Dr. Lakin's testimony and opinion was more persuasive than that of Dr. Becan. The Board provided sufficient reasons for its decision.

Davis argues, however, that the Board's decision is inconsistent with our decision in Petrucelli v. Board of Trustees, Public Employees' Retirement System, 211 N.J. Super. 280 (App. Div. 1986). In that case, the Board denied an application for accidental disability retirement benefits under N.J.S.A. 43:15A-43, finding that the appellant was totally and permanently disabled as a result of "pre-existing long-standing arthritis . . . ." Id. at 281.

The record showed that the appellant fell while working and sustained injuries to his cervical or thoracic spine. Id. at 282-83. X-rays showed that he had certain pre-existing degenerative conditions to the injured areas of the spine, including spondylolisthesis. Id. at 283. We noted that the appellant was

A-4070-18

forty-nine years old at the time of the accident, and while he performed a substantial amount of heavy labor, "he had never experienced any problems with his back." Id. at 288.

We pointed out that when he was X-rayed following the accident, he learned for the first time that he had a spondylolisthesis, which was previously non-symptomatic. Ibid. We noted that it was "entirely speculative" whether the appellant would have developed low-back symptoms independently of the accident. Id. at 289. We concluded that the appellant's disability was the direct result of the accident, not the non-symptomatic underlying condition. Ibid.

Here, the Board explained that the facts are different from those in Petrucelli. The Board stated that Davis's 2005 accident had compromised his knee, and Dr. Lakin had "reliably" testified that the traumatic injury and ACL reconstruction surgery predisposed him to arthritis. Dr. Lakin had opined that "the knee is never the same."

Moreover, Dr. Lakin had relied on the AAOS study, which found that Davis's 2005 injury and 2006 ACL surgery significantly increased his chances of suffering from symptomatic arthritis in the future. Based on this evidence, it was not "entirely speculative" whether Davis would suffer from arthritic

changes to his knee or experience the symptoms he complained of after the 2015 incident. Thus, Petrucelli does not support Davis's arguments on appeal.

We have considered the other arguments Davis has raised. We conclude that these arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Accordingly, we affirm the Board's January 29, 2019 determination that Davis was not entitled to accidental disability retirement benefits under N.J.S.A. 43:16A-7, and its decision of April 9, 2019, denying Davis's application for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4070-18